**Brantley SLATER, Plaintiff,**

v.

**SKYHAWK TRANSPORTATION, INC., Mark Young, S.D. Warren Paper Company, XYZ Corporation, ABC Partnership, Mary Doe, and John Doe, Defendants.**

**Skyhawk Transportation, Inc., and Mark Young, Third Party Plaintiffs,**

v.

**S.D. Warren Paper Company and Reco Constructors, Inc., Third–Party Defendants.**

**Civil Action No. 97–1853.**

United States District Court, D. New Jersey.

May 4, 1999.

Gerald M. Eisenstat, Eisenstat, Gabage, Berman & Furman, P.C. Vineland, NJ, for Brantley Slater.

Richard W. Yost, John M. Campbell, Yost & Tretta, Haddonfield, NJ, Bennnet I. Bardfeld, Vineland, NJ, for Skyhawk Transp., Inc. and Mark Young.

Joseph M. Assan, Law Offices of Thomas Dempster, III, Mt. Laurel, NJ, for S.D. Warren Paper Co.

James Francis Supple, Fitzpatrick, Reilly, Supple & Gaul, New Providence, NJ, for Reco Constructors, Inc.

## OPINION

ORLOFSKY, District Judge.

This case involves a complex and, at times, seemingly convoluted, mélange of often misunderstood legal issues, including choice of law, third party practice, Rule 11 sanctions, and a survey of the law of negligence of Michigan, New Jersey, and Virginia. In an effort to speed this case to trial, I have resolved all pending motions in an omnibus opinion that only mirrors in breadth what it treats in depth.

Defendant and Third Party Defendant, S.D. Warren Paper Co. ("S.D.Warren"), has filed a motion to dismiss the Amended Complaint of Plaintiff, Brantley Slater ("Slater"), which alleges that, on May 8, 1995, Slater was injured when struck by a tractor trailer. In response to S.D. Warren's motion to dismiss, Slater filed a cross-motion to amend his complaint *nunc pro tunc*. In his Amended Complaint, Slater alleges that S.D. Warren, the owner of the paper mill at which the accident occurred, Defendant, Skyhawk Transportation, Inc. ("Skyhawk Transportation"), the owner of the truck, and Defendant, Mark Young ("Young"), the driver of the truck, are all jointly and severally responsible, and, therefore, liable, for his injuries. Skyhawk and Young (collectively, "Skyhawk") have also filed a motion for summary judgment, arguing that they were not at fault.[1] Third Party Defendant, Reco Constructors, Inc. ("Reco"), Slater's employer at the time of the incident which Skyhawk claims is liable for the accident, has also filed a cross-motion for summary judgment, claiming that it, too, was not at fault. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

For the reasons set forth below, I hold that no conflict of law exists and, therefore, I will apply the law of Michigan, New Jersey, and Virginia to the issues presented by the parties in their various motions. Upon application of the law of these three states, I find that Slater's claims against S.D. Warren are time-barred. Further, I find that Slater's claims against S.D. Warren do not relate back to the filing of the original complaint, because, among other reasons, Slater did not amend to correct "a mistake concerning the identity of the proper party." *See* Fed. R.Civ.P. 15(c)(3)(B). Accordingly, I will dismiss Slater's claims against S.D. Warren and deny Slater's motion to amend *nunc pro tunc* as futile. Additionally, because I have found that counsel for Slater may have failed to conduct a reasonable inquiry into the law

---

1. Skyhawk has moved "for an Order Granting Summary Judgment Pursuant to Federal Rule of Civil Procedure 56." Notice of Motion for Summary Judgment, filed Feb. 22, 1999, at 1. Skyhawk has not specified, however, against which parties it seeks such an order. With the exception of two sentences, in which Skyhawk claims that "the injuries to Brantley Slater were directly and proximately caused by the negligence of [S.D.] Warren and Reco," Skyhawk makes no mention of Reco in its brief in support of its motion for summary judgment. Memorandum of Law in Support of Skyhawk Transportation, Inc. and Mark Young's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56, Feb. 22, 1999, at 24. Thus, because Skyhawk's brief in support of its motion only makes arguments with respect to Slater and S.D. Warren, I will assume that Skyhawk has moved for summary judgment only against those two parties, and not against Reco.

before filing the Amended Complaint, I will enter an Order to Show Cause, directing Gerald M. Eisenstat, Esq., counsel for Slater, to show cause whether he has violated Rule 11(b)(2) of the Federal Rules of Civil Procedure, and what sanctions, if any, should be imposed.

I also find that this Court does not have subject matter jurisdiction over Skyhawk's allegations, contained in its two third party complaints, that S.D. Warren and Reco each are directly and solely responsible for Slater's injuries, because Rule 14(a) of the Federal Rules of Civil Procedure only permits allegations of derivative liability. Accordingly, I will dismiss Skyhawk's Third–Party Complaints against S.D. Warren and Reco to the extent that they allege direct and sole liability.

I further find that the summary judgment record contains numerous genuine issues of material fact. As a result, I will deny Skyhawk's motion for summary judgment and Reco's cross-motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May of 1995, Slater was working for Reco as a welder. Slater Dep. Tr. at 34–37. Reco had entered into a contract with S.D. Warren, a paper manufacturer, "to provide materials and services necessary to repair a tank located on [S.D. Warren's] premises in Muskegon[, Michigan]." Certification of Kate T. Gallagher ("Gallagher Cert."), filed Oct. 21, 1998, ¶ 3; see also Plaintiff's Rule 56.1 Statement of Material Facts ("Plaintiff's Statement"), filed Feb. 22, 1999, Ex. B (S.D. Warren Purchase Order purchasing Reco's repair services); Motion of Defendants, Skyhawk Transportation, Inc., and Mark Young, for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 ("Skyhawk's Motion"), filed Feb. 22, 1999, Ex. D (General Agreement between S.D. Warren and Reco).

To complete the repair project, Reco sent Slater, as well as Larry Worsham, Alan North, James Largen, John Best, and Fred Croft, to the repair site. Worsham Dep. Tr.

at 209.[2] Reco, through its subsidiary, American Galvanizing, also subcontracted with Skyhawk Transportation to deliver a load of steel plates, by tractor trailer, from Folsom, New Jersey, to the S.D. Warren plant in Michigan, for use in the repairs. See Gallagher Cert. ¶ 3; see also Plaintiff's Statement, Exs. C (Bill of Lading) & D (Skyhawk Transportation Invoice for American Galvanizing); Corson Dep. Tr. at 66–68.

Mark Young, who drove the Skyhawk Transportation truck that carried this load of steel to Muskegon, testified that when he arrived at the S.D. Warren premises at 7 a.m. on May 8, 1995:

> [T]here was someone when I pulled in[to] the gate. An individual asked me who was I unloading for, and I said, RECO Construction. And he said, Pull over to the fence and when everybody gets here, they will come out and let you know where they want you to go.

Young Dep. Tr. at 102. Young waited between forty-five minutes and two hours for the Reco employees to tell him to move his truck so that the Reco repair crew could unload it. Id. at 110. Then, Young "pulled away from the spot where [he] was parked.... [He] pulled up. [He] circled around, and [he] proceeded back with the help of ... two [Reco] guys." Id. at 127; see also Gallagher Cert. ¶ 3 ("When delivering the steel to the plant on May 8, 1995, [Young], the Skyhawk driver, with the help of one or two Reco [employees guiding him], backed the truck into the space where the steel was to be unloaded."); Young Dep. Tr. at 293 (testifying that he was driving the truck while Reco employees guided him). James Largen served as the "spotter" and directed Young as he backed the truck into the spot in which Reco employees would unload it. Largen Dep. Tr. at 57–59. The Reco spotters were guiding Young so that he would back his truck up to a large slate steel toolbox, or "gang box," that was adjacent to the tank that Reco had contracted to repair. See Slater Dep. Tr. at 151; see also Largen

---

**2.** Worsham testified that "Glen" Largen was a member of the Reco repair crew. "Glen" Largen's full name is James Glenn Largen, and he is known both as "James" and "Glenn." See Largen Dep. Tr. at 8.

Dep. Tr. at 69, 72; Young Dep. Tr. at 149–50. Largen testified that he checked behind the truck twice and "didn't see nobody," but then "the steel got in [his line of vision, so he] was just going to let [Young] bump" the gang box back behind the truck. Largen Dep. Tr. at 63.

Unfortunately, as Young was driving the truck back towards the gang box, Slater was standing behind the truck "getting rods to put in the rod oven." Worsham Dep. Tr. at 228; *see also* Largen Dep. Tr. at 65–67, 74. Alan North, who was standing on the right side of the truck, noticed that Slater had been pinned between the truck and the gang box and "hollered at" Largen, who signaled to Young to stop and "back up." *Id.* at 66. Slater, according to Young and Largen, appeared hurt or in pain. *See* Largen Dep. Tr. at 75; Young Dep. Tr. at 204. Worsham, the head of the project for Reco, then drove Slater to the hospital. *See* Worsham Dep. Tr. at 274–75.

The parties dispute the manner in which Young backed up to the gang box. In his deposition, Young testified that he "could see out [the sideview] mirror" and that he could see two Reco "spotters" out his left window, directing him back into the spot. Young Dep. Tr. at 138, 192. Young also testified that he could see the people directing him through his mirror and by looking at them directly. *See id.* at 192. Young further testified that his view of the area behind the truck was completely blocked by the tank to his right and rear, *see id.* at 194, 196, but he continued to look in his right sideview mirror "a few times" anyhow. *Id.* at 194–95. Young's attempts to check his right sideview mirror did not assist him, because he "[couldn't] see nothing [sic] on [that] side." Young Dep. Tr. at 204. Young's line of vision was totally blind to the right and the rear. *See id.* at 203. As Young testified, "if there was somebody back there [behind the truck], I couldn't seem them . . . . My mirrors had full view of the tank. It was blind [behind the truck]." *Id.* at 202.

Young also described the precautions that he took before backing up his truck toward the gang box. Young testified that, while he did not have an audible beeper to sound while he drove in reverse, he believes that he did turn on flashing lights on the truck's trailer as he reversed. *Id.* at 130–31, 135. While Young could not see behind him, he had observed the area into which he was backing up before he started to move the truck. *See id.* at 139. In addition, Young knew that one of the Reco spotters "had a view of the back." *Id.* at 189. Young remembers that he probably told one of the spotters that he had no view of the right side of the truck. *See id.* at 283. Furthermore, Young testified that he had to rely on these spotters, because "once [he] entered the construction site, [he could] only do what they [Reco employees] allow me to do, so [he had] to obey their directions. [He] had no control over it." *Id.* at 283. He testified that he "was solely guided by the RECO staff employees" in determining how to operate his truck "from the time [he] stepped foot on that S.D. Warren plant until the time of the accident." *Id.* at 294.

Based on his version of the events, Young concluded that "Mr. Slater caused his own accident." *Id.* at 264. Young explained:

> I'm being controlled by his [Slater's] two co-workers, and whether the truck had a beeper on it or not, air brakes make noise, and by me keeping my foot on the air brake, each time I let up to move, it releases. It makes noise. And I can't, for the life of me, see how he could have not heard it.

*Id.* at 264 –65.

By contrast, James Largen, Young's "spotter," testified that Young watched him out of the left window "and never did look another way. If he'd have looked out his right hand mirror, he could have seen back there." Largen Dep. Tr. at 67. Largen added that he had "never seen [Young] looking at the right-hand mirror at all." *Id.* at 97. Largen repeated that if Young had looked out of his right sideview mirror "[h]e would have been able to see" Slater and "where he was backing up to." *Id.* at 98. Further, Largen contradicted Young's version of the events by testifying that Young had not activated his flashers while backing up toward the toolbox. *Id.* at 72. Largen, however, also had no idea

"that anybody was in or around the gang box area." *Id.* at 73–74.

Moreover, Charles Skalsky, who, at the time of the accident, was the Safety and Health Manager for S.D. Warren, investigated the accident hours after it occurred. Skalsky Dep. Tr. at 19, 40–41. He testified that, based on his investigation, "the truck driver was at fault for not properly communicating with a spotter and possibly the spotter [sic] was a contributing factor in that they did not properly communicate with the truck driver." *Id.* at 42.

Edward North, another member of the Reco repair crew, testified that, "years ago," he drove "a crane truck for Adams Construction Company." North Dep. Tr. at 143. North testified that when he drove this truck he checked both his left and his right side-view mirror when backing up. *See id.* at 143–44. Similarly, Skalsky testified that "it's the driver's responsibility to make sure that the communication [between the driver and the spotter] is clear, concise and so forth." Skalsky Dep. Tr. at 47.

Just as the parties disagree on the events of May 8, 1995, they also, not surprisingly, dispute the cause of the accident. Based on his interpretation of the summary judgment record, Slater claims, *inter alia,* that Young drove negligently, Skyhawk negligently failed to equip its trucks with an audible warning system for use while driving in reverse, and S.D. Warren negligently failed to maintain a safety plan and to ensure proper safety conditions. *See* Amended Complaint. Skyhawk, by contrast, claims that Young acted entirely under the direction and control of his Reco "spotters" and, as a result, the accident was caused by the negligence of Reco and its employees. *See* Third Party Complaint.

## II. LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

### A. Motion to Dismiss

■ In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court may only dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support

of his or her claims which would entitle him or her to relief. *See, e.g., Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, *see, e.g., Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and factfinding").

■ "When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998). Thus, a court's reliance upon documents attached to the complaint does not transform a motion to dismiss into one for summary judgment. *See id.*

The Court's examination of documents or affidavits attached to a brief in support of a motion to dismiss, however, can transform a motion to dismiss into one for summary judgment. Rule 12(b) of the Federal Rules of Civil Procedure, however, provides that:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

In support of its motion to dismiss, S.D. Warren filed the Certification of Kate T. Gallagher, Esq., accompanied by seven exhibits, including an excerpt of Slater's deposition testimony. In response to S.D. Warren's motion to dismiss, Slater filed the

Certification of Gerald M. Eisenstat, Esq., accompanied by four exhibits, including excerpts from the deposition testimony of Kimm Miller and Charles Skalsky. I find that I cannot resolve the motion to dismiss without considering these certifications and the exhibits attached to them. I also find that, because both parties filed certifications and exhibits with their briefs in support of their respective positions, both parties have had a "reasonable opportunity to present all materials" pertinent to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). Accordingly, I will treat S.D. Warren's motion to dismiss as one for summary judgment.

### B. Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reitz v. County of Bucks,* 125 F.3d 139, 143 (3d Cir.1997); *Hersh v. Allen Prod. Co.,* 789 F.2d 230, 232 (3d Cir.1986). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See, e.g., Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987).

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("By its very terms, this standard provides that the

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion ...; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992) ("[T]o raise a genuine issue of material fact ... the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather must exceed the " 'mere scintilla' threshold."), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). If the non-moving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.,* 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989)).

### III. DISCUSSION

#### A. Choice of Law

This Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, over Slater's and Skyhawk's claims of negligence. In resolving a claim brought under the Court's diversity jurisdiction, "the law to be applied ... is the law of the state." *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 417, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (holding that, under the *Erie* doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law").

In a case such as this, in which the plaintiff, a Virginia citizen, has filed suit against a New Jersey corporation and a New Jersey citizen, alleging injuries arising out of an accident that took place in Michigan, the Court must determine which state's law to apply.

 "To make this choice of law, a federal court whose jurisdiction over a state claim is based on diversity, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, [313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)], must apply the conflicts of law principles of the forum state." *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir.1982). "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir.1994). Similarly, "the initial prong" of the New Jersey choice of law analysis "entails an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis." *Gantes v. Kason Corp.*, 145 N.J. 478, 484, 679 A.2d 106 (1996).

At the outset, I must consider the statute of limitations periods in Michigan, New Jersey, and Virginia to resolve S.D. Warren's argument that Slater's claim against it, contained in the Amended Complaint, is timebarred. Under Michigan law, "[t]he period of limitations is 3 years after the time of the death or injury for ... actions to recover damages for the death of a person, or for injury to a person or property." Mich. Comp. Laws Ann. § 600.5805(8). Under New Jersey law, "[every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued]." N.J. Stat. Ann. § 2A:14–2. Under Virginia law, "every action for personal injuries, whatever the theory of recovery, ... shall be brought within two years after the cause of action accrues." Va.Code Ann. § 8.01–243.A.

Despite the difference between the Michigan limitations period of 3 years and the New Jersey and Virginia limitations period of 2 years, there is no true conflict of laws.

The cause of action accrued on May 8, 1995, the date of the accident. Slater amended his complaint, adding a claim against S.D. Warren on August 14, 1998—over three years from the date of the accident. Thus, under all three statute of limitations periods, Slater's claim against S.D. Warren is timebarred, unless the amendment relates back to the filing of the original complaint, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. I will consider that question in the next section. *See infra* Section III.B.

Similarly, my review of the relevant standard of care and the bar against recovery from a co-employee under Michigan, New Jersey, and Virginia law, as set forth below, "shows that application of the law of each state to the facts of this case leads to the same outcome." *See Rohm & Haas Co.*, 689 F.2d at 429. "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict' and the Court should avoid the choice-of-law question." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997) (applying the law of Maryland and Pennsylvania); *see also Rohm & Haas Co.*, 689 F.2d at 429 ("When such a 'false conflict' exists, New Jersey conflicts of law rules permit the resolution of the case without a choice between the laws of the [three] states."); *State Farm Automobile Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 41, 417 A.2d 488 (1980) (same). Indeed, the United States Court of Appeals for the Third Circuit, in *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir.1978), "warn[ed] courts to avoid dicta on conflicts questions when not put in issue." *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir.1994) (citing *Melville*, 584 F.2d at 1311 n. 7). Accordingly, I will apply the laws of Michigan, New Jersey, and Virginia to the issues presented by the parties in their respective motions.

**B. Slater's Claim Against S.D. Warren and Slater's Cross Motion to Amend *Nunc Pro Tunc***

 As S.D. Warren notes, and Slater does not dispute, Slater's claim asserted

against S.D. Warren, contained in the Amended Complaint, is barred by the statute of limitations for personal injury actions under Michigan, New Jersey, and Virginia law. *See* Mich. Comp. Laws Ann. § 600.5805(8) (three year statute of limitations); N.J. Stat. Ann. § 2A:14–2 (two year statute of limitations); Va.Code Ann. § 8.01–243.A (two year statute of limitations). Slater's cause of action accrued on May 8, 1995, the date of the accident, and he did not attempt to assert a claim against S.D. Warren until August 14, 1998. *See* Amended Complaint, Count Two, filed Aug. 14, 1998; *see also* Plaintiff's Claim Against Third Party Defendant, S.D. Warren Paper Company Pursuant to [Fed.R.Civ.P.] 14, filed Aug. 14, 1998.

In response, Slater argues that he did not discover his claim against S.D. Warren until the summer of 1998. *See* Brief in Opposition to S.D. Warren Company's Motion to Dismiss Plaintiff's Complaints and For Sanctions and in Support of Plaintiff's Cross Motion for Leave to Amend Complaint Nunc Pro Tunc ("Plaintiff's Brief in Opposition to Motion to Dismiss"), filed Oct. 21, 1998, at 3–4. Specifically, he claims that the depositions of Kimm Miller, on June 30, 1998, and of Charles Skalsky, on August 19, 1998, for "the first time [provided] evidence, implicating [S.D.] Warren on a negligence theory." *Id.* In essence, Slater argues that the discovery rule should apply in this case.

"The discovery rule was developed to avoid the 'harsh results that would otherwise flow from the mechanical application' of the statute of limitations." *Gallagher v. Burdette–Tomlin Med. Hosp.*, 318 N.J.Super. 485, 492, 723 A.2d 1256 (App.Div.1999) (quoting *Vispisiano v. Ashland Chem. Co.*, 107 N.J. 416, 426, 527 A.2d 66, (1987)). "The discovery rule delays the accrual of a cause of action until 'the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" *Baird v. American Med. Optics*, 155 N.J. 54, 66, 713 A.2d 1019 (1998) (quoting *Lopez v. Swyer*, 62 N.J. 267, 272, 300 A.2d 563 (1973)); *accord Jackson County Hog Producers v. Consumers Power Co.*, 234 Mich.App. 72, 76–77, 592 N.W.2d 112, 114–15 (1999) (holding

that, under the discovery rule, "a claim does not accrue for limitations period purposes until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered (1) an injury and (2) the causal connection between the injury and the defendant's breach of duty"). *But see Professionals I, Inc. v. Pathak*, 1998 WL 966136, at *4 (Va.Cir.Ct. Dec. 14, 1998) ("Virginia's 'discovery rule' only applies to a very narrow class of actions, including fraud and mistake.") (citing Va.Code Ann. § 8.01–249(1)). "The question is whether the plaintiff 'knew or should have known of sufficient facts to start the statute of limitations running.'" *Gallagher*, 318 N.J.Super. at 493, 723 A.2d 1256 (quoting *Mancuso v. Neckles*, 316 N.J.Super. 128, 134, 719 A.2d 716, (App.Div.1998) (quoting *Baird*, 155 N.J. at 72, 713 A.2d 1019)); *accord Jackson County Hog Producers*, 234 Mich.App. at 77–78, 592 N.W.2d 112 ("The test to be applied in determining when a cause of action accrued is an objective one, based on objective facts, and not on what a particular plaintiff subjectively believed.").

■ Slater has not demonstrated that, through the exercise of reasonable diligence, he could not have discovered the existence of his claim against S.D. Warren. At the moment the accident occurred, Slater knew the identity of S.D. Warren and, as a result, Slater, or his counsel, had ample opportunity to investigate the possibility of asserting a claim against S.D. Warren well before the expiration of the statute of limitations period. The failure of Slater to discover his claim against S.D. Warren can only be attributed to a lack of diligence. Thus, the discovery rule does not apply.

Furthermore, Slater's arguments strain credulity. Slater suggests that during the deposition of Charles Skalsky, *taken on August 19, 1998*, he learned for "the first time" of the claim that he asserted against S.D. Warren in his Amended Complaint, *filed on August 14, 1998*. Plaintiff's Brief in Opposition to Motion to Dismiss at 4. That notion is clearly ridiculous. In addition, Slater presents excerpts from the depositions of Kimm and Skalsky, *see* Eisenstat Cert., Exs. A & B, however, the excerpts do not reveal any in-

formation that Slater learned through these depositions. Considering that Slater's claim against S.D. Warren substantially mimics the claim asserted by Skyhawk against S.D. Warren in its Third Party Complaint, there is no reason to believe that Slater learned anything in these depositions that he did not already know, or that he could not have learned with minimal diligence. Clearly, the discovery rule does not apply in this case.

In an attempt to breathe life back into his moribund claim against S.D. Warren, Slater argues that the Amended Complaint relates back to the date of the filing of the original complaint, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. *See* Plaintiff's Brief in Opposition to Motion to Dismiss at 5–9. Rule 15(c) provides, in relevant part:

An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted if ... within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c); *see also Bryan v. Associated Container Transp.*, 837 F.Supp. 633, 642 (D.N.J.1993) (holding that section (1) of Rule 15(c) applies where a plaintiff seeks to add a new defendant).

■ I will consider Rule 15(c)(3) first. There is no evidence that S.D. Warren received "notice of the institution of the action" within 120 days, which is "the period provided by Rule 4(m) for service of the summons and complaint" as applied in this case. *See* Fed.R.Civ.P. 4(m). Since the original complaint was filed on April 2, 1997, Slater must demonstrate that S.D. Warren received notice of the institution of this action by July 31, 1997, which is 120 days after April 2,

1997. Since Skyhawk did not file its Third Party Complaint against S.D. Warren until October 27, 1997, there is no evidence in the record before me suggesting that S.D. Warren had any notice of this litigation before October 27, 1997. Slater, in his brief in opposition to S.D. Warren's motion to dismiss, does not even claim that S.D. Warren received notice within 120 days of the filing of the original complaint. *See* Plaintiff's Brief in Opposition to Motion to Dismiss at 8 ("With respect to the notice requirement, [S.D.] Warren has been a party to this litigation since October, 1997, and has been involved in all discovery aspects of this case.").

Furthermore, I do not need to find that S.D. Warren will suffer prejudice in maintaining a defense in order to conclude that Slater's Amended Complaint does not relate back due to lack of notice. *See Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir.1995). As the Third Circuit noted in *Nelson:*

Even if, as here, there was no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose. At some point, defendants should have notice of who their adversaries are.

*Id.* (quoting *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C.Cir.1982)). Thus, even without a showing of prejudice, I find that Slater's Amended Complaint does not relate back to the date of the original complaint, because Slater has failed to demonstrate that S.D. Warren received notice of the institution of this litigation within 120 days of the filing of the original complaint.

Moreover, even if S.D. Warren did receive notice on or before July 31, 1997, Slater has failed to demonstrate that there was "a mistake concerning the identity of the proper party." *See* Fed.R.Civ.P. 15(c)(3). Rule 15(c)(3) "permits an amendment to relate back only where there has been an error made concerning the identity of the proper party—not where there is lack of knowledge of a proper party." *Jordan v. Tapper*, 143 F.R.D. 575, 588 (D.N.J.1992) (Wolfson, M.J.) (citing *Rylewicz v. Beaton Servs. Ltd.*, 698 F.Supp. 1391 (N.D.Ill.1988), *aff'd*, 888 F.2d 1175 (7th Cir.1989)). In his brief in opposi-

tion to S.D. Warren's motion to dismiss, Slater admits that he lacked knowledge that he might possess a claim against S.D. Warren. *See, e.g.*, Plaintiff's Brief in Opposition to Motion to Dismiss at 4 (noting that the deposition of Charles Skalsky, on August 19, 1998, "was the first time that evidence, implicating [S.D.] Warren on a negligence theory, was revealed to plaintiff"). In this case, "[t]here has not been a mistake in identity. It is clear that the plaintiff does not intend to substitute [S.D. Warren] for a mistakenly named defendant in the original complaint." *See Jordan*, 143 F.R.D. at 590. Instead, Slater seeks to add an additional defendant, which he cannot do under Rule 15(c)(3).

In addition, Slater has not presented any evidence that S.D. Warren "knew or should have known" that it was the intended defendant. Slater's complaint asserted claims against both Skyhawk and Young and not against S.D. Warren. As a result, "[t]he complaint gave [S.D. Warren] no reason during the relevant period to believe that [Slater] had intended to sue" it. *See Lundy v. Adamar, Inc.*, 34 F.3d 1173, 1183 (3d Cir. 1994). After Skyhawk filed a third party complaint against S.D. Warren, Slater still did not amend the complaint to add S.D. Warren as a defendant for almost a year. This lack of activity by Slater provided S.D. Warren with an "affirmative reason to believe that [Slater] did not wish to assert liability against" S.D. Warren. *See id.* In an instance such as this:

> Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) is not met.

*Id.* Quite simply, "relation back will be refused if the court finds that there is no reason why the proposed parties should have understood that they were not named due to a mistake." *Jordan*, 143 F.R.D. at 587.

■ Nor does Rule 15(c)(1) permit relation back under these circumstances, because Slater's Amended Complaint does not relate back under Michigan, New Jersey, or Virginia state law.

Michigan Court Rule 2.118(D) provides:

> Relation Back of Amendments. Except to demand a trial by jury under [Michigan Court Rule] 2.508, an amendment relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

*See also Hurt v. Michael's Food Center, Inc.*, 220 Mich.App. 169, 559 N.W.2d 660, 665 (1996) (quoting the text of the rule). In interpreting this Rule, however, the Michigan Court of Appeals has determined that:

> Although an amendment generally relates back to the date of the original filing if the new claim asserted arises out of the conduct, transaction, or occurrence set forth in the original pleading, [Michigan Court Rule] 2.118(D), the relation back doctrine does not extend to the addition of new parties.

*Employers Mut. Cas. Co. v. Petroleum Equip. Co.*, 190 Mich.App. 57, 475 N.W.2d 418, 420 (1991); *see also Thomas v. Process Equipment Corp.*, 154 Mich.App. 78, 397 N.W.2d 224, 226–27 (1986) (holding that "amendments to a complaint that add new parties do not relate back"); *Browder v. International Fidelity & Ins. Co.*, 98 Mich. App. 358, 296 N.W.2d 60, 62 (1980) ("The general rule is that an amendment does not relate back to the original filing date for purposes of adding a new party defendant when the statute of limitations has expired as to that defendant."), *aff'd*, 413 Mich. 603, 321 N.W.2d 668 (1982). Thus, Slater's Amended Complaint does not relate back under Michigan law, because it adds a new party, namely, S.D. Warren.

Michigan law does permit a plaintiff to correct a misnomer if "the intended defendant ... was fully informed [before the expiration of the statute of limitations]; and no one was misled by the misnomer to any detriment." *Bensinger v. Reid*, 17 Mich. App. 219, 169 N.W.2d 361, 364 (1969). As I concluded above, however, Slater is not at-

tempting to correct a misnomer, but to add a new party. Further, there is no evidence in the record to suggest that S.D. Warren knew of the institution of this case before the expiration of the statute of limitations, which, under Michigan law, was on May 8, 1998. *See* Mich. Comp. Laws Ann. § 600.5805(8).

Virginia Code § 8.01–6 provides:

A misnomer in any pleading may, on the motion of any party, and on affidavit of the right name, be amended by inserting the right name. An amendment changing the party against whom a claim is asserted, whether to correct a misnomer or otherwise, relates back to the date of the original pleading if (i) the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading and (ii) within the limitations period prescribed for commencing the action against the party to be brought in by the amendment, that party received such notice of the institution of the action that he will not be prejudiced in maintaining a defense on the merits and he knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Va.Code Ann. § 8.01–6. I have already concluded above that there is no evidence that S.D. Warren had notice of this litigation until October, 1997. As a result, there is no evidence that S.D. Warren received notice by May 8, 1997, that is, "within the limitations period prescribed [under Virginia law] for commencing the action." *See id.; see also* Va.Code Ann. § 8.01–243.A. Similarly, I have already concluded that there is no evidence that S.D. Warren "knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against" it. *See id.* § 8.01–6.

Nor can Slater argue that he merely seeks to correct a misnomer, because the Virginia Supreme Court has held that a "[m]isnomer arises when the right person is incorrectly named, not where the wrong defendant is named." *Swann v. Marks*, 252 Va. 181, 476 S.E.2d 170, 171 (1996). As I have already

determined, Slater has not incorrectly named the right party, but failed to add a new one.

Finally, New Jersey Court Rule 4:9–3, which governs when an amendment relates back, provides:

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

In *Viviano v. CBS, Inc.*, the New Jersey Supreme Court interpreted this rule as requiring the plaintiff to demonstrate that:

(1) the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence alleged or sought to be alleged in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; and (3) the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her.

*Viviano*, 101 N.J. at 553, 503 A.2d 296; *see also Arroyo v. Pleasant Garden Apartments*, 14 F.Supp.2d 696, 701 (D.N.J.1998) (Orlofsky, J.). "Like ... Rule [15(c) ], New Jersey's Rule 4:9–3 requires that for an amendment changing, or presumably, adding a party to relate back, the new party must receive notice of the institution of the action prior to the running of the applicable statute of limitations." *Lundy v. Adamar, Inc.*, 34 F.3d 1173, 1184 (3d Cir.1994); *see also Arroyo*, 14 F.Supp.2d at 701 (holding that "the plaintiff has the burden to prove that a defendant, who was added to the complaint after the expiration of limitations period, received notice within that period").

As I concluded above, there is no evidence in the record before me suggesting that S.D. Warren had notice of this case before the

expiration of the statute of limitations. Furthermore, there is no evidence suggesting that S.D. Warren "knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her." *See* N.J. Ct. R. 4:9–3; *see also Viviano*, 101 N.J. at 553, 503 A.2d 296. Slater did not misidentify a party; he simply failed to include one. Thus, Slater's Amended Complaint does not relate back to the date of the filing of the original complaint under New Jersey Court Rule 4:9–3.

New Jersey law, however, also permits a plaintiff to add new defendants past the expiration of the statute of limitations if the plaintiff listed fictitious defendants. " 'Where a defendant is sued in a fictitious name because of plaintiff's inability to ascertain his indemnity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time.' " *Bryan v. Associated Container Transp.*, 837 F.Supp. 633, 643 (D.N.J.1993) (Simandle, J.) (quoting Comment to N.J. Ct. R. 4:26–4); *see also* N.J. Ct. R. 4:26–4 ("In any action, . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name."). To permit amendment back through the use of a fictitious defendant, however, the plaintiff must provide " 'an appropriate description sufficient to identify' the defendant." *Bryan*, 837 F.Supp. at 643 quoting *Rutkowski v. Liberty Mut. Ins. Co.*, 209 N.J.Super. 140, 146–47, 506 A.2d 1302 (App.Div.1986). For example, in *Rutkowski*, the New Jersey Superior Court, Appellate Division, held that describing a fictitious defendant as the party "otherwise responsible" for the plaintiff's injury was insufficient to provide adequate notice. *Rutkowski*, 209 N.J.Super. at 143–44, 506 A.2d 1302. The *Rutkowski* court con-

cluded that if such a meager description were permitted, then:

> A plaintiff could file a complaint on the last day before the statute of limitations would run alleging merely that he was injured in a particular situation and that "John Doe(s) were negligent and responsible for plaintiff's loss." He later could amend to include both defendants' names and the bases of responsibility.

*Id.* at 147, 506 A.2d 1302. Allowing such conduct would "completely eviscerate the statute of limitations." *Bryan*, 837 F.Supp. at 643 (citing *Rutkowski*, 209 N.J.Super. at 147, 506 A.2d 1302).

Slater's allegation against "XYZ Corporation" does not provide S.D. Warren with "an adequate description." *See* Complaint, filed Apr. 2, 1997, ¶ 3; *Bryan*, 837 F.Supp. at 643. In paragraph 3 of his original complaint, Slater alleges that:

> an insufficient amount of time has passed within which to determine the identity of any business entities and/or other persons who may be responsible for the causation of the accident. Said business entities and persons have been named as XYZ Corporation, ABC Partnership, John Doe and Mary Doe. Plaintiff reserves the right to amend the Complaint when and if their identities become known.

Complaint ¶ 3. This paragraph seeks to accomplish exactly what the *Rutkowski* court sought to avoid. Simply put, Slater cannot reserve the right to amend his complaint in violation of the statute of limitations. Furthermore, Slater has not demonstrated that he could not "ascertain [S.D. Warren's] identity despite diligent efforts." *See Bryan*, 837 F.Supp. at 643. There is no evidence in the record before me suggesting that Slater, or his counsel, made any efforts whatsoever to investigate the claim against S.D. Warren before the expiration of the statute of limitations, even though Slater knew of the existence of S.D. Warren as of the moment that the accident occurred. Thus, I conclude that Slater's claim asserted against S.D. Warren does not relate back to the date of the filing of the original complaint under New Jersey law.

Since I have determined that Slater's Amended Complaint does not relate back to the date of the filing of the original complaint under federal, Michigan, Virginia, or New Jersey law, I must conclude that it is time-barred. Accordingly, I will grant S.D. Warren's motion to dismiss Slater's claim against it. I will also dismiss Slater's motion to amend *nunc pro tunc* as futile, since the new claim contained in the Amended Complaint is time-barred.

### C. S.D. Warren's Motion for Sanctions

S.D. Warren has requested that this Court impose sanctions against Slater "for requiring S.D. Warren to incur the costs of making a motion to dismiss not one, but two, frivolous complaints." Memorandum of Law in Support of S.D. Warren Paper Company's Motion to Dismiss Plaintiff's Complaint and for Sanctions.

Rule 11 of the Federal Rules of Civil Procedure [3] "requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim." *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1090 (3d Cir.1988) (footnote omitted). "Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'" *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157

(3d Cir.1986) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986))).

"Rule 11 sanctions are based on 'an objective standard of reasonableness under the circumstances.'" *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995) (quoting *Landon v. Hunt*, 938 F.2d 450, 453 n. 3 (3d Cir.1991) (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988))). "Bad faith is not required." *Id.* At a minimum, Rule 11 requires "unambiguously that any signer must conduct a 'reasonable inquiry' or face sanctions." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 547, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

At the outset, I must note that I am deeply troubled by the contention, made by Mr. Eisenstat, counsel for Slater, that a deposition conducted on August 19, 1998, informed a pleading that he signed and filed on August 14, 1998. *See, e.g.*, Plaintiff's Brief in Opposition to Motion to Dismiss at 4 (noting that the deposition of Charles Skalsky, on August 19, 1998, "was the first time that evidence, implicating [S.D.] Warren on a negligence theory, was revealed to plaintiff"). Such a statement suggests to the Court that Mr. Eisenstat has signed a brief that contains false or misleading statements.

Slater's brief in opposition to S.D. Warren's motion to dismiss does not argue for an extension or modification of existing law. *See* Fed.R.Civ.P. 11(a)(2). Instead, Slater ignores the explicit requirements of Rule 15(c) so that he can make the untenable argument that Slater's Amended Complaint

---

3. Rule 11 provides, in relevant part:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... [that] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated

below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.... A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.... Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

Fed.R.Civ.P. 11(b) & (c).

relates back to the date of the filing of the original complaint, despite the fact that S.D. Warren never received notice within the applicable time period and Slater did not amend to correct a mistake. *See generally* Fed.R.Civ.P. 15(c); Section II.B *supra.* Further, Slater does not cite to a single case in support of his position. It appears that Slater's counsel not only failed to perform a "reasonable inquiry" into the applicable law, but failed to perform any inquiry at all. Furthermore, Ms. Gallagher's letter of August 20, 1998, provided Mr. Eisenstat with an additional opportunity to research the applicable law and withdraw the claim against S.D. Warren as time-barred. Mr. Eisenstat, however, appears to have failed to avail himself of this opportunity. *See* Gallagher Cert., Ex. G (letter from Eisenstat to Gallagher, dated Aug. 21, 1998). Thus, I find that there is compelling evidence that Mr. Eisenstat failed to conduct a reasonable inquiry in violation of Rule 11(b)(2).[4] *See Lieb,* 788 F.2d at 157 ("If reasonable preparatory steps would have avoided [the] consequences, sanctions are appropriate.").

Rule 11, however, creates a "safe harbor" that requires a party moving for sanctions to offer the opposing party a chance to withdraw "the challenged paper, claim, defense, contention, allegation, or denial." Fed. R.Civ.P. 11(c)(1)(A); *see also Hockley v. Shan Enters. Ltd. Partnership,* 19 F.Supp.2d 235, 240 (D.N.J.1998) (Brotman, J.) ("The 'safe harbor' provision requires the party moving for sanctions to notify the party against which it seeks sanctions of its intention to move for sanctions"). "The express purpose of this amendment to the rule was to prevent abuses of Rule 11 sanctions by providing parties a 'safe harbor' within which they will not be subject to sanctions unless they refuse to withdraw offending papers filed with the court." *Hockley,* 19 F.Supp.2d at 240. "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revi-

sion provides that the 'safe harbor' period begins to run only upon receipt of the motion." Fed.R.Civ.P. 11 advisory committee's note to 1993 Amendment; *see also Piantone v. Sweeney,* No. Civ. A. 94–7007, 1995 WL 691915, at *1 n. 1 (E.D.Pa. Nov. 21, 1995). As a result, "[a]n informal notice, either by letter or other means, does not trigger the commencement of the 21 day period." *Piantone,* 1995 WL 691915, at *1 n. 1. "In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call of letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." Fed.R.Civ.P. 11, advisory committee's notes to 1993 Amendment.

In this case, counsel for S.D. Warren gave "informal notice." *See id.* On August 20, 1998, Kate T. Gallagher, Esq., counsel for S.D. Warren, sent a letter to Gerald M. Eisenstat, Esq., counsel for Slater, to request that Slater "withdraw the complaint against S.D. Warren." Gallagher Cert., Ex. F (letter from Kate T. Gallagher, Esq., to Gerald M. Eisenstat, Esq., dated Aug. 20, 1998). Ms. Gallagher also wrote: "If the complaint is not withdrawn, I will move to dismiss the complaint and will request that plaintiff be required to pay all costs associated with the motion." *Id.* In response, Mr. Eisenstat wrote that he had "no intention of either dismissing the Complaint or the claim against" S.D. Warren. *Id.,* Ex. G (letter from Eisenstat to Gallagher, dated Aug. 21, 1998).

In this case, S.D. Warren has also complied with the formal component of the "safe harbor" provision by virtue of its compliance with Local Civil Rule 7.1(f) and Appendix N to the Local Civil Rules. Appendix N requires the moving party and opposing party to exchange all briefs amongst themselves before filing the briefs with the Clerk, so that the court receives a complete motion packet of all of the briefs. *See* L. Civ. R. 7.1(f) & Appendix N.[5] Appendix N requires that the

---

4. Rule 11 bars the Court from imposing monetary sanctions upon a represented party for a violation of Rule 11(b)(2). As a result, a finding of a Rule 11 violation would be limited to Mr. Eisenstat, counsel for Slater, and would not extend to Slater himself.

5. By Order, filed March 31, 1999, Chief Judge Thompson, on behalf of the Court, amended Local Civil Rule 7.1(f) and Appendix N, however, I must apply the version of the Rule and Appendix in effect in 1998, when S.D. Warren filed its

parties file only their cover letters with the Clerk, until an entire motion packet has been compiled, which is then filed with the Clerk. Generally, as a result of the operation of Appendix N, the moving party must provide the opposing party with a copy of the brief in support of the motion at least 17 days before the motion is filed. In this case, however, Ms. Gallagher mailed, via United Parcel Service, a copy of the motion and the memorandum of law in support thereof on August 27, 1998. *See* Letter from Kate T. Gallagher, Esq., to Gerald M. Eisenstat, Esq., dated Aug. 27, 1998, filed Aug. 31, 1998. The motion was not filed until October 21, 1998, providing Mr. Eisenstat with more than three weeks in which to withdraw the Amended Complaint. As a result, I find that, in this case, S.D. Warren has complied with the "safe harbor" provision by virtue of its compliance with Local Civil Rule 7.1(f) and Appendix N. This holding is limited to the facts of this case, because it is possible to comply with Local Civil Rule 7.1(f) and Appendix N and provide the opposing party with a copy of the motion and brief in support thereof only 17 days before the motion is filed, which is an insufficient amount of time to comply with the "safe harbor" provision.

■ S.D. Warren, however, has not complied with the portion of Rule 11 that requires that "[a] motion for sanctions under this rule shall be made separately from other motions." *See* Fed.R.Civ.P. 11. Rule 11(c)(1)(A) "provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion." Fed. R.Civ.P. 11, advisory committee's notes to 1993 Amendment. "Because [S.D. Warren's] motion for sanctions was included in [its] motion to dismiss, the [C]ourt will deny [S.D. Warren's] motion for sanctions as it is not in compliance with Rule 11." *Voice Sys. Marketing Co. v. Appropriate Technology Corp.*, 153 F.R.D. 117, 120 (E.D.Mich.1994); *see also Tate v. Lau*, 865 F.Supp. 681, 691 (D.Nev.1994) ("Because Defendants' request was not made separately pursuant to Fed. R.Civ.P. 11(c)(1)(A), the Court will deny Defendants' request.").

Rule 11, however, also permits the court "[o]n its own initiative, [to] enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision(b) with respect thereto." Fed.R.Civ.P. 11(c)(1)(B). In resolving S.D. Warren's motion to dismiss, I have concluded that Mr. Eisenstat may have violated Rule 11(b)(2), however, I have denied S.D. Warren's motion for sanctions, because it failed to comply with a technical

motion. At that time, Appendix N to the Local Civil Rules provided, in relevant part:

> The procedures set forth in this Appendix will govern motions governed by L. Civ. R. 7.1(f).
>
> The moving party will prepare its notice of motion, brief, affidavits and other supporting documentation.... These papers will be sent to all adversaries and a copy of the cover letter *ONLY* will be sent to the Deputy Clerk of the Judge to whom the case is assigned. The Copy of the cover letter will be filed in the Clerk's office.
>
> ... An original and two copies of all opposition papers are then to be served on the moving party (one copy is to be served on all other parties) [within 10 days], with a copy of *ONLY* the cover letter to be sent to the Judge's chambers. The reply is due from the moving party within seven days.... One copy of the reply is to be served on all parties, with a copy of the cover letter to be sent to the Judge's chambers....
>
> After the motion has been fully briefed and is ready for submission to the Court, all original

papers, plus one copy of each together with a cover letter are to be sent to the Clerk. The originals will be filed; the copies will be delivered to the Judge. The cover letter is to list separately *each* document (brief, affidavit, etc.) submitted. A copy of the cover letter is to be forwarded to the Deputy Clerk of the Judge to whom the case is assigned ...

L. Civ. R. 7.1(f), App. N. In 1998, Local Civil Rule 7.1(f) provided, in relevant part:

> A Judge may advise the attorneys in a particular case or in all his or her civil cases, other than *habeas corpus* or *pro se* litigation,, that dispositive motions and other motions presenting complex legal or factual issues shall be presented and defended in the manner prescribed in Appendix N to these Rules.

L. Civ. R. 7.1(f). Appendix 2 to the Local Civil Rules, in effect at the time of the filing of the motion to dismiss, noted that "Judge Orlofsky requires that the procedures of L. Civ. R. 7.1(f) be followed with respect to dispositive motions." L. Civ. R., App. 2.

requirement of Rule 11(c)(1)(A). As a result, I shall issue an order, with this Opinion, which directs Mr. Eisenstat to show cause whether he has violated Rule 11(b)(2) and what sanctions, if any, should be imposed. In his response to the Order to Show Cause, Mr. Eisenstat will have the opportunity to demonstrate that he did conduct a "reasonable inquiry," *see* Fed.R.Civ.P. 11(b), to determine whether Slater's claim against S.D. Warren was time-barred.

The Order to Show Cause will be returnable before this Court on June 18, 1999, at 9:30 a.m. Mr. Eisenstat shall file and serve his brief in response to the Order to Show Cause on or before May 25, 1999. S.D. Warren shall file and serve its responsive papers on or before June 4, 1999, and Mr. Eisenstat shall file and serve his reply brief, if any, on or before June 11, 1999. The Order to Show Cause will be decided on the papers without oral argument.

### D. Skyhawk's Third Party Complaint Against S.D. Warren and Reco

■ "It is well established that, even if a party does not make a formal motion to dismiss, the court may, *sua sponte*, dismiss the complaint where the inadequacy of the complaint is clear." [6] *Michaels v. New Jersey*, 955 F.Supp. 315, 331 (D.N.J.1996) (Barry, J.); *see also Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980); *Bowers v. National Collegiate Athletic Ass'n*, 9 F.Supp.2d 460, 497–98 (D.N.J.1998) (Orlofsky, J.) ("The Court may, *sua sponte*, dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear."); *Arunga v. AIPAC*, No. Civ. A. 93–24, 1993 WL 294074, at *2 (E.D.Pa. July 29, 1993) (concluding that "[t]he Third Circuit has held that a district court has the power to dismiss a complaint *sua sponte* "); *Washington Petroleum & Supply Co. v. Girard Bank*, 629 F.Supp. 1224, 1230–31 (M.D.Pa.1983) (holding that "it is well settled that 'even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint ... where the inade-

quacy of the complaint is apparent as a matter of law' ") (quoting *Coggins v. Carpenter*, 468 F.Supp. 270, 279 (E.D.Pa.1979)). In addition, the Federal Rules of Civil Procedure require that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R.Civ.P. 12(h)(3); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1013, 140 L.Ed.2d 210 (1998) (holding that " 'every federal ... court has a special obligation to satisfy itself ... of its own jurisdiction' ") (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)). At the same time, however, "the plaintiff must be given the safeguard of having all its allegations taken as true and 'all inferences favorable to plaintiff will be drawn.' " *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). In light of this authority, I will consider the adequacy of Skyhawk's Third Party Complaint against S.D. Warren, filed on September 26, 1997, and its Third Party Complaint against Reco, filed on October 27, 1997.

■ Rule 14(a) of the Federal Rules of Civil Procedure, which governs third party practice, provides, in relevant part: "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R.Civ.P. 14(a). "A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." *FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir.1994) (quoting Charles A. Wright, et al., 6 *Federal Practice and Procedure* § 1446, at 355–58 (1990)). "Under Rule 14(a), a third-party defendant may not be impleaded merely because he may be liable

---

**6.** By contrast, the Court may not grant summary judgment without giving the parties notice and a "[reasonable opportunity to present all materials]" relevant to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980) (quoting Fed.R.Civ.P. 56).

to the plaintiff." *Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). "Courts have stringently followed the rule that a third party complaint may not set forth a claim of the third party defendant's liability to the plaintiff." *Toberman v. Copas,* 800 F.Supp. 1239, 1242 (M.D.Pa.1992). "A theory that another party is the correct defendant is not appropriate for a third party complaint." *Id.* "Any third party complaint which does not facially meet this test is not proper under Rule 14 and thus falls outside of this court's ancillary jurisdiction." *Id.; see also Ronson v. Talesnick,* 33 F.Supp.2d 347, 356 (D.N.J. 1999) (Greenaway, J.).

 In its Third Party Complaint against Reco, Skyhawk alleges that:

[D]ue to its negligence, carelessness and/or recklessness, third party defendant, RECO Constructors, Inc., is solely liable to the plaintiff, joint and severally liable to the plaintiff and/or over to defendants/third party plaintiffs for any causes of action alleged in the plaintiff's Complaint and for the whole of any amount which may be awarded in favor of the plaintiff and against defendants/third party plaintiffs.

Third Party Complaint of Defendants, Skyhawk Transportation, Inc. and Mark Young, Against Reco Constructors, Inc., filed Oct. 27, 1997, at 3. Skyhawk asserts an identical claim against S.D. Warren. *See* Third Party Complaint of Defendants, Skyhawk Transportation, Inc. and Mark Young, Against S.D. Warren Paper Co., filed Sept. 26, 1997, at 3. Further, in its Answer to Slater's Complaint, Skyhawk alleges that "[i]f indeed the plaintiff did sustain injuries as alleged in his Complaint, said injuries were caused by the acts and/or omissions of fellow servants [*i.e.,* Reco] ... [and/or] third parties [*i.e.,* S.D. Warren] over whom answering defendant[s] had no control and for whose conduct answering defendants are not responsible." *Id.,* Ex. A (Answer and Affirmative Defenses of Defendants, Skyhawk Transportation, Inc. and Mark Young, filed Aug. 7, 1997, at 5–6).

A "claim of sole and direct liability to the third party to [the plaintiff[ ]] does not comprise a proper third party claim under Rule 14." *Toberman,* 800 F.Supp. at 1242. Ac-cordingly, I will dismiss Skyhawk's claims for sole liability asserted against S.D. Warren and Reco, because this Court lacks subject matter jurisdiction over those claims. *See Toberman,* 800 F.Supp. at 1242. As a result, both S.D. Warren and Reco cannot be found liable unless the jury first determines that Skyhawk is liable to Slater, and, even then, only to the extent of Skyhawk's joint and several liability to Slater. *See Millard v. Municipal Sewer Auth.,* 442 F.2d 539, 541 (3d Cir.1971); *Schwab v. Erie Lackawanna R.R. Co.,* 438 F.2d 62, 66 (3d Cir.1971).

**E. Skyhawk's Motion for Summary Judgment against Slater and S.D. Warren**

Skyhawk has moved for summary judgment with respect to its Third Party Complaint against S.D. Warren for negligence and with respect to Slater's allegations of negligence asserted against it. *See* Memorandum of Law in Support of Skyhawk Transportation, Inc. and Mark Young's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 ("Skyhawk's Memorandum"), filed Feb. 22, 1999; *see also supra* note 1.

"To establish a *prima facie* case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages." *Markis v. City of Grosse Pointe Park,* 180 Mich.App. 545, 448 N.W.2d 352, 358 (1989); *accord Anderson v. Sammy Redd & Assocs.,* 278 N.J.Super. 50, 56, 650 A.2d 376 (App.Div. 1994) ("It is fundamental that a case sounding in negligence requires a showing of a duty, a breach of that duty and foreseeable resulting injury proximately caused by the breach."); *Wiggins v. Battlefield Equestrian Center Corp.,* No. 166789, 1998 WL 961175, at *3 (Va. Cir. Ct. Dec. 9, 1998) (holding that, to meet his or her burden of proof on a negligence claim, a plaintiff "must prove, by a preponderance of the evidence, that the defendants owed a legal obligation to [him or] her; that they breached their duty of ordinary care; and that the breach of their

duty was the proximate cause of" the plaintiff's injuries) (citing *Austin v. Consolidation Coal Co.*, 501 S.E.2d 161 (Va.1998)). "[T]he standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances." *Ettin v. Ava Truck Leasing, Inc.*, 53 N.J. 463, 483, 251 A.2d 278 (1969); *accord Babula v. Robertson*, 212 Mich.App. 45, 536 N.W.2d 834, 839 n. 2 (1995) ("The standard of care in a negligence action is that of a person of reasonable prudence under like circumstances."); *Trail v. White*, 221 Va. 932, 275 S.E.2d 617, 619 (1981) (holding that "the standard of care the law imposes is that degree of care an ordinarily prudent person would exercise under similar conditions"). "The question is what a reasonable and prudent person would have done under the circumstances, and where fairminded men would differ on that, the issue goes to the trier of the facts." *Shellhammer v. Lehigh River R.R. Co.*, 14 N.J. 341, 344, 102 A.2d 602 (1954); *accord Marr v. Yousif*, 167 Mich.App. 358, 422 N.W.2d 4, 6 (1988) (holding that "the jury determines what constitutes reasonable care under the circumstances"); *McMillan v. Michigan State Highway Comm'n*, 426 Mich. 46, 393 N.W.2d 332, 339 (1986) ("When reasonable minds may differ regarding the application of the reasonableness of the risk of harm, the question is best left to the jury."); *Southern Stevedoring Corp. v. Harris*, 190 Va. 628, 58 S.E.2d 302, 306 (1950) (" 'Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men.' ") (quoting *Morris v. Peyton*, 148 Va. 812, 139 S.E. 500, 504 (1927)).

### 1. Slater's Claims Against Skyhawk

█ As I discussed above, the parties dispute whether Young, in driving the truck backwards, used his right sideview mirror, looked to the right at all, and flashed the lights on the trailer to alert people in the area that he was driving in reverse. *See supra* Section I. These factual issues bear materially upon whether Young acted reasonably in driving his truck.

In addition, the parties dispute what caused the accident. To resolve this dispute, the jury must draw inferences from the evidence and determine which party or parties was or were at fault. The drawing of such inferences is a role that must be performed by the jury. Where the facts permit contradictory inferences that lead to inconsistent conclusions, it is the function of the jury alone to draw these inferences. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 234 (3d Cir.1987) (holding that the district court " 'invaded forbidden territory' " when it entered summary judgment in a case where contradictory inferences could be drawn to support inconsistent outcomes) (quoting *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)); *see also Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1062 (3d Cir.1991) (holding that "it is clear that a district court should not weigh the evidence and determine the truth of the matter itself, but instead should determine whether there is a genuine issue for trial"). "[A]t the summary judgment stage the [trial] judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *In re Unisys Savs. Plan Lit.*, 74 F.3d 420, 433 n. 10 (3d Cir.1996) ("It thus remains the province of the factfinder to ascertain the believability and weight of the evidence."). In its motion for summary judgment, Skyhawk requests that I weigh the evidence to determine who caused the accident. I may not do so, as that is "forbidden territory." *See Jackson*, 826 F.2d at 234.

To avoid this conclusion, Skyhawk argues that Young was entirely under the control of Reco and, therefore, could not avoid the accident. There is no evidence in the record, however, to suggest that Young could not have stopped the truck had he known that Slater was behind it. To suggest that Young was somehow obligated to pin Slater against the gangbox if a Reco employee told him to do so is simply preposterous. Thus, it remains for the jury to determine if Young's

reliance on the Reco "spotters" to guide him as he drove backwards was reasonable under the circumstances. *See Ettin v. Ava Truck Leasing, Inc.,* 53 N.J. 463, 483, 251 A.2d 278 (1969); *Babula v. Robertson,* 212 Mich.App. 45, 536 N.W.2d 834, 839 n. 2 (1995); *Trail v. White,* 221 Va. 932, 275 S.E.2d 617, 619 (1981).

■ Skyhawk also claims that there is no evidence that the corporation, Skyhawk Transportation, was liable, even if Young was at fault. *See* Brief in Reply to the Plaintiff's Opposition to the Motion of Defendants, Skyhawk Transportation and Mark Young for Summary Judgment, filed Feb. 22, 1999, at 13. Slater, however, presented evidence that Skyhawk did not equip the truck with an audible beeper to sound while the truck drove in reverse, *see* Young Dep. Tr. at 130, 135, and that Young's commercial license had been suspended six times. *See id.* at 221–233. From this evidence, a jury could reasonably conclude that Skyhawk did not act reasonably to discharge its duty of care. *See Markis,* 448 N.W.2d at 358; *Anderson,* 278 N.J.Super. at 56, 650 A.2d 376; *Wiggins,* 1998 WL 961175, at *3.

■ Moreover, "[u]nder the doctrine of respondeat superior, an employer is liable to a third party for the torts of one of its employees if that employee is acting within the scope of his or her employment." *Planet Ins. Co. v. Anglo American Ins. Co.,* 312 N.J.Super. 233, 240, 711 A.2d 899 (App.Div. 1998); *accord Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641, 663 (1984) ("Respondeat superior liability generally can be imposed only where the individual tortfeasor acted during the course of his or her employment and within the scope of his or her authority."); *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 372 S.E.2d 391, 394 (1988). I find that there is sufficient evidence in the summary judgment record from which the jury could conclude that Young was "acting within the scope of his ... employment" when the accident occurred. *See Planet Ins.,* 312 N.J.Super. at 240, 711 A.2d 899. Thus, the jury could find that Skyhawk Transportation is directly and/or vicariously liable for Slater's alleged injuries.

In addition, Skyhawk argues that Young qualifies as a "co-employee" of Slater and, therefore, Slater's claim for injuries occurring in the workplace is barred under the Virginia workers' compensation statute. *See* Skyhawk's Memorandum at 16–21. The workers' compensation statutes in Virginia, Michigan, and New Jersey all bar an employee from suing another employee for work-related injuries. *See* N.J. Stat. Ann. § 34:15–8 (workers' compensation statute exclusive remedy for work-related injuries); Mich. Comp. Laws Ann. § 418.131 (same); Va.Code Ann. § 65.2–307 (same); *see also Estrada v. Hendricksaw Corp.,* 302 N.J.Super. 262, 264, 695 A.2d 323 (App.Div.1997) (holding that "a 'co-employee' of an injured worker entitled to workers' compensation is ordinarily immune from common-law or other actions by the injured worker"); *Dixon v. Sype,* 92 Mich.App. 144, 284 N.W.2d 514, 516 (1979) (holding that "the exclusive remedies provision applies to actions against coemployees as well as employers"); *Rasnick v. Pittston Co.,* 237 Va. 658, 379 S.E.2d 353, 354 (1989) (holding that workers' compensation statute is exclusive remedy except for claims against a "stranger to the business").

Skyhawk claims that the independent contractor relationship between Skyhawk Transportation, Young's employer, and Reco, Slater's employer, transformed Young and Slater into co-employees for the purposes of the workers' compensation statutes. Since each state has its own test for determining when an alleged tortfeasor is a "co-employee," I will consider the law of each state *seriatim.*

### a. Virginia Law

■ Virginia has adopted the "borrowed servant doctrine" to determine if an alleged tortfeasor is a co-employee for the purpose of workers' compensation immunity. *See Metro Machine Corp. v. Mizenko,* 244 Va. 78, 419 S.E.2d 632, 634 (1992). "Under the borrowed servant doctrine, a worker, although directly employed by one entity, may be transferred to the service of another so that he becomes the employee of the second entity 'with all the legal consequences of the new

relation.' " *Id.* (quoting *Standard Oil v. Anderson,* 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480 (1909)). "One of the legal consequences of the 'new relation' is that workers' compensation is the injured employee's exclusive remedy against the second entity-employer" and its employees. *See id.*

"[C]ontrol over the employee is the most important factor in consideration of the borrowed servant status, although it alone may not be dispositive." *Id.* The critical inquiry is the second employer's ability to control "not only ... the work to be done, but ... the time and method of doing it." *Coker v. Gunter,* 191 Va. 747, 63 S.E.2d 15, 18 (1951). The "mere[ ] recei[pt of] directions ... as to details for performing" work, however, does not transform an employee into a borrowed servant. *Id.* In addition, the court should consider:

> (1) who has control over the employee and the work he is performing; (2) whether the work performed is that of the borrowing employer; (3) was there an agreement between the original employer and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate its relationship with the employee; (6) who is responsible for furnishing the work place, work tools and working conditions; (7) the length of the employment and whether it implied acquiescence by the employee; (8) who had the right to discharge the employee; and (9) who was required to pay the employee.

*Metro Machine,* 419 S.E.2d at 635.

The facts in *Coker* provide an instructive example. In that case, Lock Joint, a construction company, needed some trucks to complete a pipe-laying job, so it "made an arrangement with Gunter to furnish trucks and drivers at the rate of $2.50 an hour for both." *Coker,* 63 S.E.2d at 16. "Gunter's only instruction to his driver was to report to Lock Joint, see Coker or Matthews and do the work he was directed by either of them to do." *Id.* Further:

> The power of control and direction was entirely with Lock Joint, which told [the driver] when to work and when to quit, where to go and what to do, and specifical-

ly when and how to handle the truck in the movement which on this occasion resulted in the injury to Coker. The work being done was planned by Lock Joint, and the time, means and method of doing it were under its exclusive control. The injuries suffered by Coker were injuries growing out of the business of Lock Joint and a hazard of that business.

> [The driver's] obedience to Lock Joint's directions were not mere cooperation, but complete subordination. Lock Joint could not discharge him from Gunter's employ, it is true, but it could effectively discharge him from its own service if he was disobedient to its command.

*Id.* 63 S.E.2d at 18.

Unlike the driver in *Coker,* Reco, or its employees, did not control when Young started and complete his work days, even on the day of the accident. *See generally* Young Dep. Tr. Reco did not provide Young with his assignments nor did it give him directions regarding the best route. *See* Young Dep. Tr. at 26. By contrast, Reco did assign jobs to its own employees. *See, e.g.,* Worsham Dep. Tr. at 22. To the extent that Young followed the instructions of any Reco employee, it was for a minute fraction of the time that he spent delivering the steel shipment from New Jersey to Michigan. Also, unlike the driver in *Coker,* "Young was not required to perform whatever services Reco requested." Reco's Memorandum in Opposition to Defendants, Skyhawk and Young's Motion for Summary Judgment ("Reco's Memorandum"), filed Feb. 22, 1999, at 10. Thus, for an overwhelming majority of the time that Young spent delivering steel under the contract between Skyhawk Transportation and American Galvanizing, Reco did not "ha[ve] control over [him] and the work he [was] performing." *See Metro Machines,* 419 S.E.2d at 635.

Additionally, while the accident occurred, Young was making a delivery and not assisting in the repair of the tank. "The injuries suffered by [Slater] were injuries growing out of the business of [construction] and[, therefore,] a hazard of that business" and not of the business in which Young was engaged. *See Coker,* 63 S.E.2d at 18. In other words,

Young was performing the work of his employer, a transportation company, and not of "the borrowing employer." *See Metro Machines*, 419 S.E.2d at 635.

Finally, there is no evidence in the summary judgment record suggesting that Reco and its employees had the ability to discharge Young, either from his employment at Skyhawk Transportation or from its own service. As a result, I conclude that Young did not act under the control of Reco, but merely voluntarily accepted the assistance of its employees. In other words, an application of the factors announced in *Metro Machines* reveals that, under Virginia's "borrowed servant doctrine," Young was not a borrowed servant and, therefore, is not a co-employee with Slater.

This conclusion is confirmed by the line of Virginia cases holding that "[t]he Workmen's Compensation Act does not bar a tort action if the person who causes the injury is an 'other party' within the meaning of the Act." *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107, 108–09 (1969); *see also Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453, 455 (1985) ("[I]f ... the employee's injury is caused by the negligent act of a party who is stranger to the trade, occupation, or business of his employer, the employee may maintain an action at law against the 'other party.'"). Those cases hold that "one who merely delivers ... materials is not engaged in the trade, business, or occupation of a builder and, therefore, is an 'other party' subject to suit" under Virginia's workers' compensation statute. *Conlin*, 331 S.E.2d at 455–56; *Burroughs*, 168 S.E.2d at 108 (holding "persons who function solely as suppliers and delivers of goods" are not in the trade, business, or occupation of a construction company). By contrast, a person who makes deliveries for a company that regularly delivers it own goods, *see Floyd v. Mitchell*, 203 Va. 269, 123 S.E.2d 369 (1962), or a person who delivers materials to a construction company and then assists in the construction project, *see Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), is not an "other party."

This case is similar to facts in *Burroughs* and unlike those in *Floyd* and *Bosher*. While

the accident occurred, Young was driving a truck for a trucking company. He did not load or unload the steel on the truck, *see* Young Dep. Tr. at 84, 217, nor did he assist Reco with the repair of the liquid storage tank. In other words, Young was not engaged in same trade, business, or occupation of Reco Constructors. Accordingly, I find that Young was not Slater's co-employee under Virginia law.

#### b. Michigan Law

Under Michigan law, the court applies the "economic reality test" to determine "whether employment exists for purposes of the workers' compensation" statute. *Farrell v. Dearborn Mfg. Co.*, 416 Mich. 267, 330 N.W.2d 397, 400 (1982). " 'Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one.' " *Id.* (quoting *Schulte v. American Box Board Co.*, 358 Mich. 21, 99 N.W.2d 367, 372 (1959) (Smith, J., concurring)).

I have already concluded that Reco did not "control" Young's activities. Skyhawk Transportation, and not Reco, paid Young's wages. *See* Young Dep. Tr. at 26. Reco did not hire Young, nor did it select him as the driver for the steel shipment. *See id.* at 26, 58. Similarly, there is no evidence in the summary judgment record to suggest that Reco had the authority to fire or discipline Young. Quite simply, none of the factors that this Court must consider under the "economic reality test" suggests that Young was an employee of Reco. As a result, I conclude that Young was not Slater's co-employee under Michigan law.

#### c. New Jersey Law

Under New Jersey law, the court must "utilize[ ] two tests to determine whether a person is an employee or an independent contractor: (1) the 'right to control' test and (2) the 'relative nature of the work' test." *Conley v. Oliver & Co.*, 317 N.J.Super. 250, 254, 721 A.2d 1007 (App.Div.1998). "These two tests are basically designed to draw a distinction between those occupations which are properly characterized as separate enter-

208

prises and those which are in fact an integral party of the employer's regular business." *Pollack v. Pino's Formal Wear & Tailoring*, 253 N.J.Super. 397, 407, 601 A.2d 1190 (A.D. 1992). "In recent years '[t]he courts have placed greater reliance upon the relative nature of the work test' than upon the control test." *Conley*, 317 N.J.Super. at 254, 721 A.2d 1007 (quoting *Pollack*, 253 N.J.Super. at 407, 601 A.2d 1190).

The "right to control" test "considers whether the employer had 'control' over the worker, or in other words, whether the employer had 'the right to direct the manner in which the business or work shall be done, as well as the results to be accomplished.'" *Sloan v. Luyando*, 305 N.J.Super. 140, 148, 701 A.2d 1275 (App.Div.1997) (quoting *Kertesz v. Korsh*, 296 N.J.Super. 146, 152, 686 A.2d 368 (App.Div.1996) (quoting *Brower v. Rossmy*, 63 N.J.Super. 395, 404, 164 A.2d 754 (App.Div.1960), *cert. denied*, 34 N.J. 65, 167 A.2d 54 (1961))). "Under the [right to] control test, the actual exercise of control is not as determinative as the right of control itself." *Pollack*, 253 N.J.Super. at 408, 601 A.2d 1190. "[T]he requirement of control is sufficiently met where its extent is commensurate with that degree of supervision which is necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it." *Conley*, 317 N.J.Super. at 254, 721 A.2d 1007 (quoting *Marcus v. Eastern Agric. Ass'n, Inc.*, 58 N.J.Super. 584, 597, 157 A.2d 3 (App.Div. 1959) (Conford, J., dissenting), *rev'd*, 32 N.J. 460, 161 A.2d 247 (1960) (adopting the reasoning of Judge Conford)).

In *Conley*, for example, Conley entered into a contract with Oliver & Company ("Oliver"), an independent insurance adjusting company, to work as a temporary claims adjuster. *Conley*, 317 N.J.Super. at 252, 721 A.2d 1007. The New Jersey Superior Court, Appellate Division, determined that Oliver & Company had "control" over Conley, because:

[Oliver] provided [Conley] with the price schedules he was required to use in evalu-

ating claims, and its supervisory employees reviewed his claim forms and tentative agreements with claimants as a matter of course before sending them to the insurance companies for final approval and payment. Moreover, [Conley] was required to spend time in [Oliver's] office each morning and to communicate by telephone with supervisors at other times in the day. And even though [Conley] generally set his own work schedule, [Oliver] would sometimes direct him to give priority to particular claims. Significantly, [Oliver] exercised substantially the same supervision over [Conley] as its regularly employed claims adjusters.

*Id.* at 256, 721 A.2d 1007.

By contrast, Reco had a negligible amount of actual control over Young and no right to control him. Reco did not set his schedule or determine his assignments. There is no evidence in the summary judgment record to suggest that Reco had the authority to determine the rate Young charged for his services. The only actual control that Reco exercised over Young lasted for just minutes of a delivery job that took days to complete. *See id.* at 97, 100 (testifying that he picked up the steel on Friday, May 5, 1995, and delivered on Monday, May 8, 1995). Thus, I find that Reco did not possess the right to control Young.

"A second measure of employee status to be considered is the 'relative nature of the work' test, under which the court will find that an employer-employee relationship exists if there is shown 'substantial economic dependence' upon the 'employer' and it is demonstrated that there is a 'functional integration' of their respective operations." *Sloan*, 305 N.J.Super. at 148, 701 A.2d 1275 (quoting *Caicco v. Toto Bros.*, 62 N.J. 305, 310, 301 A.2d 143 (1973)). The "court will inquire into whether the work done by [employee] was an integral part of the regular business of the [employer]. If such is found then the court will determine that an employment relationship existed." *Rossnagle v. Capra & Shell Oil Co.*, 127 N.J.Super. 507, 517, 318 A.2d 25 (App.Div.1973).

To use *Conley* as an example again, Conley worked as a claims adjuster for Oliver, an

independent insurance adjusting company. *See id.* at 252, 721 A.2d 1007. Thus, Conley's work was an integral part of Oliver's regular business. In addition, the *Conley* court found that "[f]or a four and one-half month period, [Conley] worked exclusively for [Oliver]" and Oliver proved Conley with "his sole means of support during that period." *Id.* at 256, 721 A.2d 1007. Based on this factual finding, the court concluded that Conley was temporarily economically dependent upon Oliver. *Id.* at 256–57, 721 A.2d 1007.

From the summary judgment record, I find that Reco is engaged in the construction business, including, at the very least, the repair of large metal tanks. Young's services, as a trucker, necessarily is a small component of the work of a construction company. Trucking is not "an integral part of [a construction company's] regular business." *Conley,* 317 N.J.Super. at 256, 721 A.2d 1007. Further, there is no evidence in the summary judgment record to suggest that Young had "a substantial economic dependence upon" Reco. *See Sloan,* 305 N.J.Super. at 148, 701 A.2d 1275. Rather, since Young's salary was paid by Skyhawk Transportation, *see* Young Dep. Tr. at 26, and his involvement with Reco lasted for a total of four days, *see id.* at 97, 100 (testifying that he picked up the steel on Friday, May 5, 1995, and delivered on Monday, May 8, 1995), the undisputed evidence in the summary judgment record demonstrates that Young had no economic dependence upon Reco. Thus, based on the summary judgment record, I conclude that, under the "relative nature of the work" test, Young was not an employee of Reco and, therefore, not a "co-employee" of Slater.

In sum, I have determined that under the law of Virginia, Michigan, and New Jersey, Young does qualify as a "co-employee" of Slater. Furthermore, given the numerous genuine issues of material fact, I must refer the issue of whether Skyhawk Transportation and Young acted reasonably under the circumstances to the jury. Accordingly, I will deny Skyhawk's motion for summary judgment with respect to Slater's claims against Skyhawk.

### 2. Skyhawk's Claim Asserted Against S.D. Warren

Skyhawk argues that "S.D. Warren[,] ... as owner of the premises is liable for the dangerous conditions existing on its premises during the plant shutdown period in which the instant accident occurred." Skyhawk's Memorandum at 21.

While Skyhawk argues that S.D. Warren "owed an independent obligation to" Slater "to implement reasonable safety precautions to prevent the type of accident which occurred," it must also prove that S.D. Warren breached that duty. *See Markis,* 448 N.W.2d at 358; *Anderson,* 278 N.J.Super. at 56, 650 A.2d 376; *Wiggins,* 1998 WL 961175, at *3. Skyhawk has not established what a "reasonable [company] of ordinary prudence [would have done] under the circumstances." *See Ettin v. Ava Truck Leasing, Inc.,* 53 N.J. 463, 483, 251 A.2d 278 (1969); *Babula v. Robertson,* 212 Mich.App. 45, 536 N.W.2d 834, 839 n. 2 (1995); *Trail v. White,* 221 Va. 932, 275 S.E.2d 617, 619 (1981). Thus, Skyhawk did not prove that S.D. Warren breached its duty by failing to act reasonably under the circumstances.

In addition, Skyhawk did not demonstrate that any alleged acts of omission or neglect on the part of S.D. Warren were the cause in fact of Slater's alleged injuries. This issue is generally left for the jury. *See, e.g., Babula v. Robertson,* 212 Mich.App. 45, 536 N.W.2d 834, 839 n. 2 (1995) (holding that "the jury decides whether there is cause in fact").

Furthermore, there are genuine issues of material fact that preclude me from granting summary judgment. *See* Fed.R.Civ.P. 56(c). For example, Skyhawk suggests that "various witnesses and corporate designees have confirmed that the [relevant time] period [was] an extremely busy and hectic time at the S.D. Warren plant." Skyhawk's Memorandum at 21. In direct contrast, however, Young testified, in his deposition, that "[w]here the accident occurred wasn't congested." Young Dep. Tr. at 136. In his deposition, Largen testified that "[a]t certain times there was a lot of stuff running in and out and then at sometimes [sic] it wasn't." Largen Dep. Tr. at 47. He added that on the morning of the accident "[t]here wasn't much going on." *Id.*

Given that there are issues remaining for resolution by the jury and that there are genuine issues of material fact, I will deny Skyhawk's motion for summary judgment with respect to its Third Party Complaint against S.D. Warren.

### F. Reco's Cross–Motion for Summary Judgment

As S.D. Warren's indemnitor, Reco has moved for summary judgment on Skyhawk's claims asserted against S.D. Warren. *See* Reco's Memorandum at 13–15; Notice of Cross–Motion for Summary Judgment by Reco Constructors, filed Mar. 8, 1999; Certification of Helen Davis Chaitman, filed Mar. 22, 1999, ¶ 3 ("Through discovery, I learned that third-party defendant Reco Constructors, Inc. had an obligation to indemnify and assume the defense of S.D. Warren."). Relying on *Tillman v. Great Lakes Steel Corp.*, 17 F.Supp.2d 672, 675 (E.D.Mich.1998), Reco argues that " 'as a general rule, an owner of property is not liable to an employee of an independent contractor for negligence.' " Reco's Memorandum at 13 quoting *Tillman*, 17 F.Supp.2d at 675. Reco contends that, because "S.D. Warren did not retain the requisite control over Skyhawk's or Young's activities," it "cannot be held liable" under Michigan law. *Id.*

While Reco correctly argues that " '[p]remises liability is conditioned upon the presence of both possession and control over the land,' " *id.* (quoting *Tillman*, 17 F.Supp.2d at 675), it has misunderstood the concept of "premises liability." "The cases upon which [Reco] relies to establish that possession and control of the premises are necessary for the imposition of liability against [a landowner] . . . rest on the assumption that the negligent conduct that was the direct cause of the accident is attributable to someone other than the owner." *See Tillman*, 17 F.Supp.2d at 678. In other words, " 'an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees.' " *Id.* (quoting *Bosak v. Hutchinson*, 422 Mich. 712, 375 N.W.2d 333, 338 (1985)).

A landowner, however, does "ha[ve] a duty to warn an invitee of hidden defects or dangerous conditions on the premises. This duty is also applicable to contractors or subcontractors performing services on the premises." *Id.* (quoting *Kirner v. Central Foundry Div. of Gen. Motors Corp.*, 41 Mich.App. 211, 199 N.W.2d 827, 829 (1972)). Thus, Skyhawk can allege that S.D. Warren is liable to Skyhawk for contribution to the extent that it breached its obligation to Slater and Reco to warn them of traffic hazards, or eliminate the traffic hazards, that allegedly existed on the S.D. Warren premises at the time of the accident. *See* Third Party Complaint of Defendants, Skyhawk Transportation, Inc. and Mark Young, Against S.D. Warren Paper Co., filed Sep. 26, 1997, ¶ 5. Skyhawk has not asserted a theory of "premises liability," but alleged that S.D. Warren is directly liable to Slater for its own negligent conduct, and derivatively liable to Skyhawk for contribution. *See id.* ¶ 6. As a result, Reco's arguments about "premises liability" are inapposite here.

Furthermore, I find that genuine issues of material fact exist regarding whether S.D. Warren fulfilled its duty to eliminate traffic hazards or otherwise warn Reco and its employees. For example, Larry Worsham, the head of the Reco repair crew during the day shift, testified that the crew "did not have an indoctrination [or orientation meeting] up there at S.D. Warren on safety." Worsham Dep. Tr. at 41. Nor did Worsham receive a safety manual from S.D. Warren on the day he arrived at S.D. Warren to begin the repair project. *See id.* at 93–94. From this evidence, a jury could reasonably conclude that S.D. Warren breached its duty to warn Reco and its employees of a dangerous condition. Accordingly, I will deny Reco's motion for summary judgment on Skyhawk's claims asserted against S.D. Warren.

### IV. CONCLUSION

For the reasons set forth above, I hold that no conflict of law exists and, therefore, I have applied the law of Michigan, New Jersey, and Virginia to the issues presented by the parties in their various motions. Upon application of the law of these three states, I find Slater's claims against S.D. Warren are time-barred. Accordingly, I will dismiss Slater's claims against S.D. Warren, and deny Slater's motion to amend *nunc pro tunc* as

futile. Additionally, because I have found that counsel for Slater may have failed to conduct a reasonable inquiry into the law before filing the Amended Complaint, I will enter an Order to Show Cause, directing counsel for Slater to show cause why he has not violated Rule 11(b)(2).

I also find this Court does not have subject matter jurisdiction over Skyhawk's allegations, contained in its two third party complaints, that S.D. Warren and Reco each are directly and solely responsible for Slater's injuries, because Rule 14(a) of the Federal Rules of Civil Procedure only permits allegations of derivative liability. Accordingly, I will dismiss Skyhawk's Third–Party Complaints against S.D. Warren and Reco to the extent that they allege direct and sole liability.

I further find that the summary judgment records contains numerous genuine issues of material fact. As a result, I will deny Skyhawk's motion for summary judgment and Reco's cross-motion for summary judgment. I will enter an appropriate order.