Brantley SLATER, Plaintiff,

v.

SKYHAWK TRANSPORTATION, INC., Mark Young, S.D. Warren Paper Company, Xyz Corporation, Abc Partnership, Mary Doe, And John Doe, Defendants,

and

Skyhawk Transportation, Inc., And Mark Young, Third Party Plaintiffs,

v.

S.D. Warren Paper Company And Reco Constructors, Inc., Third–Party Defendants.

No. CIV. A. 97–1853.

United States District Court, D. New Jersey.

Aug. 10, 1999.

Gerald M. Eisenstat, Eisenstat, Gabage, Berman & Furman, Vineland, NJ, Richard W. Yost, John M. Campbell, Yost & Tretta, East Haddonfield, NJ, Bennnet I. Bardfeld, Vineland, NJ, for Plaintiff.

Joseph M. Assan, Law Offices of Thomas Dempster III, Mt. Laurel, NJ, James Francis Supple, Fitzpatrick, Reilly, Supple & Gaul, New Providence, NJ, William B. McGuire, Tompkins, McGuire, Wachenfeld & Barry A New Jersey Limited Liability Partnership Newark, NJ, for Defendants.

William B. McGuire, Newark, NJ, for Gerald M. Eisenstat.

## OPINION

ORLOFSKY, District Judge:

This Court must consider whether Plaintiff's counsel, Gerald M. Eisenstat, Esq. ("Mr. Eisenstat"), violated his obligation under Rule 11 of the Federal Rules of Civil Procedure,[1] to conduct a reasonable inquiry into applicable law before filing a motion in

this case. More specifically, while reviewing the cross-motion of Plaintiff, Brantley Slater ("Slater"), to amend *nunc pro tunc*, which attempted to add a claim against Third–Party Defendant, S.D. Warren Paper Co. ("S.D.Warren"), this Court observed:

> At the outset, I must note that I am deeply troubled by the contention, made by Mr. Eisenstat, counsel for Slater, that a deposition conducted on August 19, 1998, informed a pleading that he signed and filed on August 14, 1998. *See, e.g.*, Plaintiff's Brief in Opposition to Motion to Dismiss at 4 (noting that the deposition of Charles Skalsky, on August 19, 1998, "was the first time that evidence, implicating [S.D.] Warren on a negligence theory, was revealed to plaintiff"). Such a statement suggests to the Court that Mr. Eisenstat has signed a brief that contains false or misleading statements.
>
> Slater's brief in opposition to S.D. Warren's motion to dismiss does not argue for an extension or modification of existing law. *See* Fed.R.Civ.P. 11(a)(2). Instead, Slater ignores the explicit requirements of Rule 15(c) so that he can make the untenable argument that Slater's Amended Complaint relates back to the date of the filing of the original complaint, despite the fact that S.D. Warren never received notice within the applicable time period and Slater did not amend to correct a mistake. *See generally* Fed.R.Civ.P. 15(c) ... Further, Slater does not cite to a single case in support of his position. It appears that Slater's counsel not only failed to perform a "reasonable inquiry" into the applicable law, but failed to perform any inquiry at all. Furthermore, Ms. Gallagher's letter of August 20, 1998, provided Mr. Eisenstat with an additional opportunity to research the applicable law and withdraw the claim against S.D. Warren as time-barred. Mr. Eisenstat, however, appears to have failed to avail himself of this opportunity.... Thus, I find that there is compelling evidence that Mr. Eisenstat failed to conduct a reasonable inquiry in violation of Rule 11(a)(2). *See* [*Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986) ] ("If

---

1. *See* Section II *supra* for the relevant part of the text of Rule 11.

reasonable preparatory steps would have avoided [the] consequences, sanctions are appropriate.").

*Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 199–200 (D.N.J.1999) (citations and footnote omitted).

As a result, this Court issued an Order to Show Cause "why sanctions should not be imposed against [Mr. Eisenstat] pursuant to Rule 11 of the Federal Rules of Civil Procedure, for failing to conduct a 'reasonable inquiry' to determine whether Slater's claim against S.D. Warren was 'warranted by existing law.'" Order, filed May 4, 1999, at 2–3. In response to the Order to Show Cause, Mr. Eisenstat filed a brief on May 25, 1999, as required by the Order to Show Cause. *See* Eisenstat's Response. Mr. Eisenstat subsequently retained William B. McGuire, Esq. ("Mr.McGuire"), of Tompkins, McGuire, Wachenfeld & Barry, to represent him individually. With leave of Court, Mr. McGuire filed a letter brief, dated July 1, 1999, in which he contends that the arguments presented in Slater's reply brief reveal that Mr. Eisenstat did perform a reasonable inquiry into the law before filing the motion to amend, as required by Rule 11.[2]

For the reasons set forth below, I find that Mr. Eisenstat has failed to demonstrate that he conducted a reasonable inquiry into the law before filing the motion to amend. Mr. Eisenstat's response to the Order to Show Cause, however, reveals that he will take his obligations under Rule 11 more seriously in the future. Accordingly, I find that an admonition and the publication of this opinion are sufficient to sanction Mr. Eisenstat for the Rule 11 violation committed in the circumstances of this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND [3]

Slater alleges that on May 8, 1995, he suffered severe physical injuries when a truck, owned by Defendant, Skyhawk Transportation, Inc. ("Skyhawk"), and driven by Defendant, Mark Young ("Young"), pinned him against a large, metal tool shed. *See Slater v. Skyhawk Transp., Inc. ("Slater I")*, 187 F.R.D. 185, 190 (D.N.J.1999). On April 2, 1997, almost two years later, Slater filed his complaint in this Court, asserting claims against Skyhawk, Young, and several fictious defendants. Approximately six months later, on September 26, 1997, Skyhawk and Young filed a third-party complaint against S.D. Warren, alleging that:

> [D]ue to its negligence, carelessness and/or recklessness, third party defendant, S.D. Warren Paper Co., is solely liable to the plaintiff, joint and severally liable to the plaintiff and/or over to defendants/third party plaintiffs for any causes of action alleged in the plaintiff's Complaint and for the whole of any amount which may be awarded in favor of the plaintiff and against defendants/third party plaintiffs.

Third Party Complaint of Defendants, Skyhawk Transportation, Inc. and Mark Young, Against S.D. Warren Paper Co. ("Third–Party Complaint"), filed Sept. 26, 1997, at 3. In particular, Skyhawk and Young claimed that S.D. Warren had caused Slater's injuries by:

(a) permitting congested conditions to exist on the premises with respect to truck and pedestrian traffic;

(b) failing to properly mark the premises to permit the uninterrupted and safe flow of truck and pedestrian traffic;

---

2. Mr. Eisenstat signed and filed a brief in response to the Order to Show Cause on behalf of Slater. *See* Plaintiff's Brief in Opposition to Order to Show Cause for Sanctions Pursuant to Federal Rule of Civil Procedure 11(b) and (c), filed May 25, 1999. I shall refer to this brief as "Eisenstat's Response." Mr. McGuire signed and filed a letter brief in response to the Order to Show Cause on behalf of Mr. Eisenstat, in his individual capacity. *See* Letter from William B. McGuire, Esq., to the Honorable Stephen M. Orlofsky, dated July 1, 1999. I shall refer to this brief as "McGuire's Response."

3. *See generally Slater v. Skyhawk Transp.*, 187 F.R.D. 185, 189–91 (D.N.J.1999) (providing a thorough discussion of the factual background of this case). The factual findings presented in this Opinion only address the Rule 11 sanctions issue raised by the Order to Show Cause.

(c) failing to properly staff the premises so as to ensure the safe flow of truck and pedestrian traffic;

(d) permitting a dangerous condition to exist in the area of the plaintiff's accident;

(e) otherwise acting negligently or carelessly under the circumstances.

Third–Party Complaint ¶ 5. After an unsuccessful attempt to arbitrate the case, S.D. Warren filed an answer to the Third–Party Complaint on January 13, 1998.

Over eight months later, on August 14, 1998, Slater filed his Amended Complaint, adding claims against S.D. Warren. In response, S.D. Warren filed a motion to dismiss, arguing that Slater's claims against S.D. Warren were time-barred. In an effort to avoid the impact of the statute of limitations in this case, Slater filed a cross-motion to amend *nunc pro tunc,* advancing the following two grounds to permit amendment out of time: (1) Rule 15(c)[4] of the Federal Rules of Civil Procedure; and (2) the discovery rule. *See* Brief in Opposition to S.D. Warren Company's Motion to Dismiss Plaintiff's Complaints and For Sanctions and in Support of Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc,* filed Oct. 21, 1998, at 3–9. More specifically, Slater argued that: (1) "the Amended Complaint relate[d] back to the date of the filing of the original complaint, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure;" *id.* at 5–9; and (2) the depositions of Kimm Miller, on June 30, 1998, and of Charles Skalsky, on August 19, 1998, for "the first time [provided] evidence, implicating [S.D.] Warren on a negligence theory." *Id.* at 4; *see also Slater I,* 187 F.R.D. at 193–94.

After reviewing the briefs submitted by the parties and the applicable law, I concluded that both the Rule 15(c) and the discovery rule arguments were without merit. As a result, I considered S.D. Warren's request for the imposition of sanctions in response to Slater's cross-motion. *See Slater I,* 187 F.R.D. at 198–202. In so doing, I noted that "Rule 11 of the Federal Rules of Civil Procedure 'requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim.'" *Id.* at 199–200. (footnote omitted) (quoting *Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1090 (3d Cir.1988) (footnote omitted)). Thus, I determined that, "[a]t a minimum, Rule 11 requires 'unambiguously that any signer must conduct a reasonable inquiry or face sanctions.'" *Id.* (quoting *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 547, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991)). Under this standard, I concluded that: "It appears that Slater's counsel not only failed to perform a 'reasonable inquiry' into the applicable law, but failed to perform any inquiry at all." *Id.*

I did not impose sanctions, however, because S.D. Warren failed to comply "with the portion of Rule 11 that requires that '[a] motion for sanctions under this rule shall be made separately from other motions.'" *Id.* at 201 (quoting Fed.R.Civ.P. 11). As a result, I denied S.D. Warren's motion for sanctions. Because I had concluded that there was evidence suggesting that Slater's counsel, Gerald M. Eisenstat, Esq., had failed to fulfill his obligation to perform a reasonable inquiry into the law underlying Slater's cross-motion to amend, I issued an Order to

---

**4.** Rule 15(c) provides, in relevant part:

An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted if ... within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c); *see also Bryan v. Associated Container Transp.,* 837 F.Supp. 633, 642 (D.N.J. 1993) (holding that section (1) of Rule 15(c) applies where a plaintiff seeks to add a new defendant).

Show Cause, pursuant to Rule 11(c)(1)(B), requiring Mr. Eisenstat "to show cause whether he has violated Rule 11(b)(2) and what sanctions, if any, should be imposed." *Id.* In the Order to Show Cause, I instructed Mr. Eisenstat to "file and serve his brief in response to the Order to Show Cause on or before May 25, 1999." *Id.* Further, I ordered S.D. Warren to "file and serve its responsive papers on or before June 4, 1999, and Mr. Eisenstat [to] file and serve his reply brief, if any, on or before June 11, 1999." *Id.*

In response to the Order to Show Cause, Mr. Eisenstat argued, on behalf of Slater, that "[t]he Court, [w]ithout [r]eason, [d]id [n]ot [c]onsider [a]nd [a]ddress Plaintiff's [r]eply [b]rief [a]nd [t]he [l]legal [c]itations [a]nd [a]rguments [c]ontained [t]herein." Plaintiff's Brief in Opposition to Order to Show Cause for Sanctions Pursuant to Federal Rule of Civil Procedure 11(b) and (c) ("Eisenstat's Response"), filed May 25, 1999, at 7. Mr. Eisenstat also claimed that the Court had erred in its reading of Slater's brief in support of his cross-motion to amend. Finally, Mr. Eisenstat urged that the relevant case law regarding Rule 11 did not "[s]upport [t]he [i]mposition [o]f [s]anctions" in this case. *Id.* at 28.

Although it originally moved for the imposition of sanctions, S.D. Warren failed to file any brief in response to the Order to Show Cause. Indeed, the June 4, 1999, deadline imposed by the Order to Show Cause passed without any communication whatsoever to the Court from S.D. Warren.

Mr. Eisenstat, by contrast, retained William B. McGuire, Esq., as his personal counsel to represent him individually in response to the Order to Show Cause. *See* Letter from William B. McGuire, Esq., to the Honorable Stephen M. Orlofsky ("McGuire's Response"), dated July 1, 1999. In that capacity, Mr. McGuire filed a letter brief on behalf of Mr. Eisenstat on July 1, 1999, arguing that the discovery rule argument depended upon the "equitable" powers of the Court and, therefore, was never a clear cut legal issue. *See id.* at 3–5 (arguing that " '[t]he discovery rule is essentially a rule of equity' ") (alteration in original) (quoting *Lopez v. Swyer,* 62 N.J. 267, 273, 300 A.2d 563 (1973)). Based on this alleged inherent ambiguity, Mr. McGuire suggested that the argument presented under the discovery rule was not "patently frivolous," the standard for the imposition of sanctions. *See id.*

## II. LEGAL STANDARD GOVERNING THE IMPOSITION OF SANCTIONS UNDER RULE 11

At its most basic level, "Rule 11 of the Federal Rules of Civil Procedure 'imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to stop, look, and listen.' " *Id.* (footnote omitted) (quoting *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986)). Rule 11 provides, in relevant part:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... [that] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.... A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not with-

drawn or appropriately corrected.... Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

Fed.R.Civ.P. 11(b) & (c).

On May 4, 1999, this Court issued an Order to Show Cause "why sanctions should not be imposed against him pursuant to Rule 11 of the Federal Rules of Civil Procedure, for failing to conduct a 'reasonable inquiry' to determine whether Slater's claim against S.D. Warren was 'warranted by existing law.'" Order, filed May 4, 1999, at 2 (quoting Fed.R.Civ.P. 11(b)(2)). Thus, as required by Rule 11(c), Mr. Eisenstat has had "notice and a reasonable opportunity to respond." Fed.R.Civ.P. 11(c); see also Carlino v. Gloucester City High Sch., 57 F.Supp.2d 1, 36–37 (D.N.J.1999) (Orlofsky, J.).

█ I set forth the standard for imposing sanctions under Rule 11 in *Slater I*, 187 F.R.D. at 199–200, where I held that:

Rule 11 of the Federal Rules of Civil Procedure "requires an attorney who signs a complaint to certify both that it is not interposed for improper purposes, such as delay or harassment, and that there is a reasonable basis in law and fact for the claim." *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1090 (3d Cir.1988) (footnote omitted). "Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'" *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986))).

"Rule 11 sanctions are based on 'an objective standard of reasonableness under the circumstances.'" *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995) (quoting *Landon v. Hunt*, 938 F.2d 450, 453 n. 3 (3d Cir.1991) (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988))). "Bad faith is not required." *Id.* At a minimum, Rule 11 requires "unambig-

uously that any signer must conduct a 'reasonable inquiry' or face sanctions." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 547, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

*Id.; see also Carlino*, 57 F.Supp.2d at 36–37. Thus, Rule 11 "requires a reasonable inquiry into both the facts and the law supporting a particular pleading." *Carlino*, 57 F.Supp.2d at 37. "[R]easonableness is defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir.) (quoting *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1359 (3d Cir.1990)), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991).

### III. DISCUSSION

In this case, Mr. Eisenstat, on behalf of Slater, advanced two bases to support the cross-motion to amend, namely Rule 15(c) and the discovery rule. I will address each argument in turn.

#### A. Rule 15(c)(3)

As I noted in *Slater I*, in his brief and reply brief in support of the cross-motion to Amend, Slater "d[id] not argue for an extension or modification of existing law." *Slater I*, 187 F.R.D. at 199–200 (citing Fed.R.Civ.P. 11(a)(2)). I also found that "Slater does not cite to a single case in support of his position." *Id.* As a result, I concluded that Mr. Eisenstat had failed to conduct any legal research before filing the cross-motion to amend and, therefore, he had failed to perform the minimal inquiry required by Rule 11(b)(2).

In response to the Order to Show Cause, Mr. Eisenstat argues that the Court failed to consider Slater's reply brief in support of his cross-motion to amend. Mr. Eisenstat contends, somewhat imperiously, that, had the Court considered the reply brief, it would have realized that its "observation that plaintiff's counsel failed to cite one case in support

of its Motion To Amend is clearly inaccurate." Eisenstat's Response at 12.

Contrary to Mr. Eisenstat's suggestion, the Court did read and review Slater's reply brief when considering his cross-motion to amend. At that time, I concluded that the reply brief did not cite one case regarding Slater's Rule 15(c) argument. I reached the same conclusion when I considered the reply brief again for the purpose of this Opinion. Indeed, Mr. Eisenstat's counsel concedes as much. In his letter brief, Mr. McGuire admits that:

> the argument originally advanced by plaintiff's counsel— relation back under Rule 15(c)— was ill-conceived in light of the time constraints imposed by that rule. Plaintiff's counsel implicitly recognized this by not pressing the Rule 15(c) argument in the reply brief and by not seeking to refute the arguments made by the defendant.

McGuire's Response at 2; *contra* Eisenstat's Response at 26 ("Although plaintiff's counsel cited no case law in support of the [Rule 15(c) ] argument plaintiff contends that the rule is worded broadly enough to encompass plaintiff's equitable arguments."). Despite his recognition of the baselessness and frivolity of the Rule 15(c) argument, Mr. Eisenstat failed to withdraw it, causing this Court to expend significant time and effort demonstrating the falsity of the proposition that Rule 15(c) would permit relation back in this case. Thus, Mr. Eisenstat's belated retreat from the Rule 15(c) argument was too little and comes too late. I find therefore, and Mr. Eisenstat has, in effect, conceded through his counsel, *see* McGuire's Response at 2, that the Rule 15(c) argument was patently frivolous.

**B. The Discovery Rule**

Despite his "concession" that the Rule 15(c) argument was patently frivolous, Mr. Eisenstat fervently argues that the discovery rule argument was not without some merit and, therefore, was not patently frivolous. Eisenstat's Response contends that the reply brief in support of the cross-motion cited numerous cases supporting the application of the discovery rule under the circumstances of this case. *See* Eisenstat's Response at 20–

24. Based on this claim, Mr. Eisenstat contends that "the viable, well-reasoned arguments presented by counsel with respect to the discovery rule demonstrate that plaintiff's counsel made [a] reasonable inquiry into the status of the law with respect to the statute of limitations to support" Plaintiff's cross-motion to amend. *Id.* at 25.

Rule 11, however, does not merely require an attorney who signs a motion to conduct a reasonable inquiry at any time before the motion is decided. Rather, "[t]he Rule imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts *prior to filing.*" *Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1314 (3d Cir.1994); *see also Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 549–50, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Thus, even if an attorney signs and files a motion without conducting research that, with luck, is supported by law discovered after filing that motion, the attorney has violated the obligation imposed by Rule 11 to conduct a reasonable inquiry *before* filing the motion. More importantly, if a party does not present the legal basis for a motion until the reply brief, the opposing party will not have the opportunity to respond. Mr. Eisenstat's contention that he satisfied Rule 11 by offering legal argument in the reply brief violates the plain language of Rule 11, and ignores the structure of our adversary system.

Furthermore, even considering the legal authority presented in the reply brief, I find that Mr. Eisenstat has failed to demonstrate that he conducted a "reasonable" inquiry into the law at any time, because his legal arguments are clearly barred by the few cases that he cites. *See* pages 217–218 *infra* (discussing the New Jersey Superior Court's holding in *Gallagher v. Burdette Tomlin Hospital,* 318 N.J.Super. 485, 723 A.2d 1256 (App.Div.1999) and comparable law in Michigan). Mr. Eisenstat argues that, because the "applicability [of the discovery rule] in any particular case is not readily predictable[,] ... the only way to be certain of whether the discovery rule will be invoked is to present the issue to the court for decision."

McGuire's Response at 3. In other words, Eisenstat contends that, since the application of the discovery rule is a murky area of law, his arguments in Slater's reply brief that the discovery rule applied in this case could not possibly be patently frivolous. While I agree that the application of the discovery rule is often unclear, this does not excuse Mr. Eisenstat from his obligations under Rule 11.

■ "The discovery rule delays the accrual of a cause of action until 'the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" *Slater I*, 187 F.R.D. at 193–94 (citing authority from Michigan relating to the discovery rule and quoting *Baird v. American Med. Optics*, 155 N.J. 54, 66, 713 A.2d 1019 (1998) (quoting *Lopez v. Swyer*, 62 N.J. 267, 272, 300 A.2d 563 (1973))).[5] In this case, Slater admitted that it had notice of the Third–Party Complaint against S.D. Warren in September 1997, and that S.D. Warren supplied discovery, under Rule 26 of the Federal Rules of Civil Procedure, in March of 1998. Thus, Slater had actual knowledge of a potential claim against S.D. Warren in September of 1997, well-within Michigan's three-year statute of limitations.

The discovery rule, however, provides that a claim does not accrue until the moment of discovery. Thus, Slater's discovery of a possible claim against S.D. Warren in September, 1997, would permit him to file a claim until September, 2000, under Michigan law, and September, 1999, under New Jersey law, if the discovery rule was applicable. As a result, this Court's holding that the discovery rule does not apply rested solely on the constructive knowledge prong of that rule. Specifically, I found that:

> Slater has not demonstrated that, through the exercise of reasonable diligence, he could not have discovered the existence of his claim against S.D. Warren. At the moment the accident occurred, Slater

knew the identity of S.D. Warren and, as a result, Slater, or his counsel, had ample opportunity to investigate the possibility of asserting a claim against S.D. Warren well before the expiration of the statute of limitations period. The failure of Slater to discover his claim against S.D. Warren can only be attributed to a lack of diligence. Thus, the discovery rule does not apply.

*Slater I*, 187 F.R.D. at 194.

In his brief in response to the Order to Show Cause, Mr. Eisenstat argues that, on this point, reasonable minds could differ, and, therefore, at least with respect to this one issue, the cross-motion was not "patently frivolous." Eisenstat's Brief at 4–5 (citing *Gallagher v. Burdette Tomlin Hosp.*, 318 N.J.Super. 485, 723 A.2d 1256 (App.Div. 1999)). A review of *Gallagher*, however, the case Mr. Eisenstat relies upon to argue that the discovery rule is one of equity without a clear outcome in any given case, reveals that the discovery rule does produce a clear outcome in some cases, including the circumstances of this case. *See Gallagher*, 318 N.J.Super. at 496–98, 723 A.2d 1256. In *Gallagher*, the New Jersey Superior Court, Appellate Division, held that:

> [W]ithin the limitations period, a plaintiff knows she has been injured and that her injury is due to the fault of another, she has a duty to act.... [W]here a plaintiff knows of a possible claim and does not act on it, she cannot invoke the discovery rule when her knowledge is finally verified as a cause of action by an expert.

*Id.* at 496, 498, 723 A.2d 1256. Thus, the discovery rule only protects a plaintiff who has "absolutely no reason" to believe that the injury was the fault of a particular party. *Id.* at 499–500, 723 A.2d 1256. In *Staub v. Eastman Kodak Co.*, 320 N.J.Super. 34, 726 A.2d 955 (N.J.Super.Ct.App.Div.1999), a case decided after *Gallagher*, the Appellate Division further elaborated upon this standard, holding:

---

5. In *Slater I*, I concluded that, under New Jersey choice of law rules, I had to apply the laws of New Jersey, Michigan, and Virginia to this case. *See Slater I*, 187 F.R.D. at 193. Virginia, however, has not adopted the discovery rule. *See id.* at 193–94. Accordingly, I will rely upon New Jersey and Michigan law in my discussion of the frivolousness of the discovery rule argument contained in Slater's cross-motion to amend.

Discovering that one might have a basis for an actionable claim means perceiving an injury and believing, or having reason to believe—with a degree of firmness that would lead a reasonable person to investigate the matter if he is interested in seeking redress—that his injury was probably caused by the fault of another. Certainty is not required.

*Id.* at 45, 726 A.2d 955.

The discovery rule under Michigan law also imposes a duty to investigate upon a plaintiff who has reason to believe that he or she may have a claim. "Under the [Michigan version of the] discovery rule, the limitation period begins to run when the plaintiff discovers or, *through the exercise of reasonable diligence,* should have discovered a possible cause of action." *Berrios v. Miles, Inc.,* 226 Mich.App. 470, 574 N.W.2d 677, 679 (1997) (emphasis added). In *Moll v. Abbott Laboratories,* 444 Mich. 1, 506 N.W.2d 816 (1993), the Michigan Supreme Court explained:

> We find that the best balance is struck in the use of the "possible cause of action" standard. This standard advances the Court's concern regarding preservation of a plaintiff's claim when the plaintiff is unaware of an injury or its cause, yet the standard also promotes the Legislature's concern for finality and encouraging a plaintiff to diligently pursue a cause of action. Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action.

*Id.,* 506 N.W.2d at 827. Thus, Michigan law requires a plaintiff to investigate once he or she has a reasonable basis upon which to believe that he or she might have a claim. *See id.*

▐ In this case, Slater knew he had been injured due to the fault of another on May 8, 1995. It was his "duty to act" and investigate within the applicable statute of limitations period, a duty which he, and his lawyer, failed to satisfy. He had ample reason to believe that S.D. Warren had some role in the accident—S.D. Warren owned the premises on which the accident occurred and S.D. Warren controlled access to the site, a fact that Slater must have known as soon as he appeared for work the morning of the acci-

dent. To suggest that a reasonable person would not have considered the possibility of a claim against S.D. Warren in these circumstances is beyond the pale.

To avoid this obvious conclusion, Mr. Eisenstat argues that the discovery rule could have applied in this case, because Slater did not have "facts" to support a claim against S.D. Warren until the depositions of Kimm Miller and Charles Skalsky, which occurred in the summer of 1998. *See* Eisenstat's Response at 18. Further, Mr. Eisenstat contends that he could not have filed a claim against S.D. Warren without such a factual basis, under Rule 11. *See id.* The discovery rule, however, does not consider the time at which a plaintiff has concrete "facts" to support a claim. That is, "knowledge of fault does not mean knowledge of a basis for legal liability or a provable cause of action; knowledge of fault denotes only facts suggesting the possibility of wrongdoing." *Staub,* 320 N.J.Super. at 45, 726 A.2d 955; *accord Jackson County Hog Producers v. Consumers Power Co.,* 234 Mich.App. 72, 592 N.W.2d 112, 115 (1999) ("It is not necessary that a plaintiff be able to prove each element of the cause of action before the period of limitation begins to run."). At the time of the accident, Slater clearly had facts suggesting "the possibility of wrongdoing" on the part of S.D. Warren. While the application of the discovery rule is often unclear, it is not unclear in this case, because any application would require Slater to investigate the possibility of a claim against S.D. Warren. This is not a case in which the plaintiff needed the assistance of an expert to determine causation or liability. Rather, any person, through the exercise of reasonable diligence and common sense, should have understood that S.D. Warren might have been liable. As a result, Mr. Eisenstat's attempts to argue that the discovery rule applies in this case cross the line separating zealous advocacy from patent frivolity. Accordingly, I find that Mr. Eisenstat has violated Rule 11(b)(2) by filing a cross-motion to amend supported only by two patently frivolous arguments.

"I have reached the decision to impose Rule 11 sanctions in this case only after careful deliberation. I do so with great re-

luctance, mindful of the duty of an attorney to represent his or her client's interest zealously." *Thomason v. Norman E. Lehrer, P.C.,* 182 F.R.D. 121, 123 (D.N.J.1998). Zealous advocacy, however, does not obviate an attorney's obligation, under Rule 11, to conduct legal research and apply the law to the facts of the case *before filing a motion.*

## IV. IMPOSITION OF SANCTIONS

■ Because I have concluded that Mr. Eisenstat violated Rule 11(b)(2) by filing a frivolous motion, I must determine what sanction, if any, is appropriate.

"The appropriate sanction is one which 'is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Thomason v. Norman E. Lehrer, P.C.,* 182 F.R.D. 121, 131 (D.N.J. 1998) (quoting Fed.R.Civ.P. 11(c)(2)); *see also Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). "The sanction may consist of, or include, directives of a nonmonetary nature, or an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2). Thus, "what is 'appropriate' may be a warm-friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to circumstances." *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 810 (3d Cir.1992). Most importantly, in determining the appropriate sanction to impose, the court should consider "the particular facts of [the] case," *Lieb,* 788 F.2d at 158, and "utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Langer,* 966 F.2d at 810.

*Carlino v. Gloucester City High Sch.,* 57 F.Supp.2d 1, 39 (D.N.J.1999) (Orlofksy, J.).

In this case, I find that an admonition and the publication of this opinion are sufficient sanctions to deter repetition of such conduct. I find that a relatively mild sanction is appropriate in these circumstances, because the seriousness with which Mr. Eisenstat has responded to the Order to Show Cause demonstrates that he will take his obligations under Rule 11(b) more seriously in the future. Further, I find that the publication of this Opinion and *Slater I,* and the imposition of an admonition, will serve as a "wake-up" call to Mr. Eisenstat, that will sensitize him to his obligations under Rule 11. Specifically, with the imposition of these sanctions, I hope that Mr. Eisenstat will realize that he must conduct legal research *before filing a motion.*

## V. CONCLUSION

For the reasons set forth above, I find that Mr. Eisenstat has failed to demonstrate that he conducted a reasonable inquiry into the law before filing the motion to amend. Mr. Eisenstat's Response to the Order to Show Cause, however, reveals that he will take his obligations under Rule 11 more seriously in the future. Accordingly, I find that the admonition contained in this Opinion, as well as its publication and the publication of *Slater I* are sufficient sanctions under these circumstances.

ORDER and ORDER TO SHOW CAUSE WHY GERALD M. EISENSTAT, ESQ., SHOULD NOT BE SANCTIONED PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

This matter having come before the Court on its own Order to Show Cause why sanctions should not be imposed against Plaintiff's counsel, Gerald M. Eisenstat, Esq., pursuant to Rule 11 of the Federal Rules of Civil Procedure, for failing to conduct a "reasonable inquiry" to determine whether Slater's claim against S.D. Warren was "warranted by existing law," Fed.R.Civ.P. 11(b)(2), Gerald M. Eisenstat, Esq., of Eisenstat, Gabage, Berman & Furman, P.C., appearing on behalf of Brantley Slater, and Richard W. Yost, Esq., and John M. Campbell, Esq., of Yost & Tretta, Esqs., and Bennet I. Bardfeld, Esq., appearing on behalf of Skyhawk Transporta-

tion, Inc., Joseph M. Assan, Esq., of the Law Officers of Thomas Dempster III, appearing on behalf of S.D. Warren Paper Co., and James Francis Supple, Esq., of Fitzpatrick, Reilly, Supple & Gaul, appearing on behalf of Reco Constructors, Inc.; and,

The Court having considered the submissions of the parties, and for the reasons set forth in the OPINION filed concurrently with this ORDER; and,

The Court having found that Plaintiff's counsel, Gerald M. Eisenstat, Esq., has violated Rule 11 of the Federal Rules of Civil Procedure, by failing to conduct a reasonable inquiry into the law before filing the cross-motion to amend *nunc pro tunc*, on behalf of Plaintiff, Brantley Slater;

Accordingly, IT IS, on this 10th day of August, 1999, HEREBY ORDERED that Plaintiff's counsel, Gerald M. Eisenstat, Esq., is ADMONISHED.